# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ( | **FOR PUBLICATION** |
| | ( | |
| Plaintiff-Appellee, | ( | **Filed:** February 23, 1998 |
| | ( | |
| | ( | |
| v. | ( | McNairy County |
| | ( | |
| | ( | Hon. Joe H. Walker, |
| GRAPEL SIMPSON, | ( | Judge |
| | ( | |
| Defendant-Appellant. | ( | No. 02S01-9702-CC-00010 |

For Plaintiff-Appellee:

John Knox Walkup
Attorney General & Reporter
Nashville, Tennessee

Michael E. Moore
Solicitor General
Nashville, Tennessee

Kenneth W. Rucker
Assistant Attorney General
Nashville, Tennessee

Elizabeth T. Rice
District Attorney General
Twenty-Fifth Judicial District
Somerville, Tennessee

Ed McDaniel
Assistant District Attorney General
Selmer, Tennessee

For Defendant-Appellant:

Lloyd R. Tatum
Tatum & Tatum
Tatum Building
Henderson, Tennessee

FILED

**February 23, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

# O P I N I O N

AFFIRMED                                    DROWOTA, J.

Based on a confidential informant's tip, police stopped the defendant's vehicle. A consensual search of her person revealed drugs. The issue in this appeal is whether the tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to satisfy the two-pronged[1] constitutional test of reliability and provide reasonable suspicion to justify the investigatory stop. We hold that it did and therefore affirm the judgment of the Court of Criminal Appeals upholding the trial court's denial of the defendant's motion to suppress.

## FACTUAL BACKGROUND

Testifying at the suppression hearing in this case, Officer Rodney Weaver of the McNairy County Sheriff's Department and Drug Task Force said that he received a call from a confidential informant at approximately 3:30 p.m. on December 30, 1994, that the defendant, Grapel Simpson, and another person, Jimmy Brumley,[2] were transporting 100 dilaudid pills from Memphis to McNairy County. The informant related that the defendant and Brumley were traveling from Memphis on Highway 64 in a two-door, cream or beige colored Oldsmobile and would arrive in Selmer "any minute." The informant did not state which of the two would be driving the vehicle. Though he did not explicitly say that the informant previously had given information resulting in arrests and convictions, Officer Weaver said he knew the informant "through previous contacts as a

---

[1]State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989).

[2]Brumley was a codefendant in this case in the trial court but is not a party to this appeal.

confidential informant." Officer Weaver acknowledged that the informant previously had been convicted of a felony, but said that he considered the information reliable, related it to McNairy County Sheriff Paul Ervin, and proceeded to Highway 64.

Sheriff Ervin arrived first at Highway 64 and identified Brumley and the defendant coming in from the west in the vehicle described by the informant. Based upon the tip and his corroboration of it, Sheriff Ervin stopped the vehicle. Officer Weaver arrived about three minutes thereafter and questioned separately the defendant and her companion. Each claimed that they were returning from Memphis, but they gave inconsistent responses about the purpose of the trip. The defendant told Officer Weaver that they had taken her niece back to Memphis, while Brumley said they had driven to Memphis alone. Officer Weaver then told the defendant that they had information she was transporting illegal drugs, to which the defendant replied, "Well, you can look. You can search. I don't have anything." Brumley, who had been driving the car, also consented to the search. The officers proceeded to search the car, but the search revealed nothing.

Officer Weaver then asked the defendant if she had any drugs on her person. Simpson responded, "No. You can look all you want." Officer Weaver replied "Well, you don't mind us looking then, if you hadn't got anything to hide," and the defendant replied "Yeah, sure." Ruth Travis, a female dispatcher, who previously had been summoned to the scene arrived less than five minutes later.

Travis, the director and dispatcher of E-911, previously had been employed by the Sheriff's Department and had conducted body searches on other occasions. Travis escorted the defendant to an area behind a patrol car which had been parked on the opposite side of the highway. The defendant removed her coat and Travis placed it in the seat of the patrol car. Travis proceeded to search the defendant`s person. Eventually, claiming that she was cold, the defendant reached for her coat. When Travis told the defendant that she would first have to search the coat before the defendant could put it on, the defendant told Travis that there were drugs in the pocket of the coat. The defendant offered to pay Travis if she would not tell the other officers about the drugs. Travis seized the coat and called for Officer Weaver. One hundred dilaudid pills were discovered in the defendant's coat pocket.

The defendant also testified at the suppression hearing and denied giving the officers permission to search either her car[3] or her person. She also denied offering to pay Travis to keep quiet about the drugs, and said the reason she had told Travis about the drugs was to avoid having to remove her clothing while standing alongside the highway on a cold day with four or five male officers on the other side of the road.

Based upon the proof summarized above, the trial court denied the defendant's motion to suppress finding "that sufficient probable cause supported

---

[3]The car was registered in the name of the defendant's son who was deceased.

-4-

the initial stop of the vehicle in which the defendant was a passenger." By denying the motion to suppress, the trial court implicitly rejected the defendant's claim that she did not consent to the search of her person or vehicle.[4] Upon the trial court's denial of her motion to suppress, the defendant pled guilty to possession of dilaudid, a Schedule II drug, with intent to deliver and sell, but reserved the right to appeal as a certified question of law the denial of her motion to suppress.[5] See, Tenn. R. Crim. P. 37(b)(2).

The Court of Criminal Appeals affirmed the trial court's denial of the motion to suppress, finding the confidential informant's tip, along with the police corroboration, sufficiently reliable to satisfy the two-pronged test and establish reasonable suspicion to render the stop valid under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968). In addition, the Court of Criminal Appeals found that the defendant voluntarily consented to the search of both her vehicle and her person. Thereafter, we granted the defendant permission to appeal, and for the reasons that follow, now affirm the judgment of the Court of Criminal Appeals.

---

[4]The trial court explicitly found "that exigent circumstances existed for an immediate search of the vehicle and of the defendant."

[5]Rule 37(b)(2)(i), Tenn. R. Crim. P., provides in pertinent part as follows:
> (b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction: (2) Upon a plea of guilty or nolo contendere if: (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case. . . .

The defendant also reserved for appeal the denial of her motion to dismiss for violation of double jeopardy. However, that claim is not at issue in this Court.

## STANDARD OF REVIEW

In resolving the issues in this appeal, we review the trial court's findings as follows:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo. State v. Yeargan, ___ S.W.2d ___, ___ (Tenn. 1997).

## CONSTITUTIONALITY OF THE STOP

### A. Informant's Tip/Reasonable Suspicion

In this Court, the defendant contends that the confidential informant's tip did not demonstrate the informant's veracity or basis of knowledge as required by this Court's decisions in State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989) and State v. Pulley, 863 S.W.2d 29 (Tenn. 1993). The defendant also contends that because the reliability of the tip was not sufficiently established, the tip did not give rise to a reasonable suspicion justifying an investigatory stop. The State responds that given the specificity of the information provided by the confidential informant, the timing of the tip, and the independent police corroboration, the tip was

–6–

sufficiently reliable to give the officers reasonable suspicion to initiate the investigatory stop.

We begin our analysis of this issue with the text of the Fourth Amendment [6] to the United States Constitution which provides:

> **Unreasonable searches and seizures. -** The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, Article 1, Section 7 of the Constitution of Tennessee guarantees

> that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions of government officials." Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). "[A]rticle I, section 7 is identical in intent and purpose with the Fourth Amendment." State v. Downey, 945 S.W.2d 102, 106 (Tenn. 1997), quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968).

---

[6]The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

Consequently, the Fourth Amendment and Article I, Section 7 demonstrate a "strong preference for searches conducted pursuant to a warrant." Ornelas v. United States, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); State v. Watkins, 827 S.W.2d 293, 295 (Tenn. 1992).

The protections embodied in both the Fourth Amendment and Article I, Section 7 apply to seizures of the person, including the stop of the defendant's vehicle in this case. Whren v. United States, 517 U.S. 806, 116 S. Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); Delaware v. Prouse, 440 U.S. 648, 654, 99 S. Ct. 1391, 1396, 59 L.Ed.2d 660 (1979); See also United States v. Hensley, 469 U.S. 221, 226, 105 S. Ct. 675, 679, 83 L.Ed.2d 604 (1985); Colorado v. Bannister, 449 U.S. 1, 4 n. 3, 101 S. Ct. 42, 44 n. 3, 66 L.Ed.2d 1 (1980) (When an officer turns on his blue lights, he or she has clearly initiated a stop). Because the stop in this case was not conducted pursuant to a warrant, it was presumptively unreasonable. However, the lower courts appropriately denied the defendant's motion to suppress because the evidence demonstrates that the seizure was effected pursuant to a narrowly defined exception to the warrant requirement.

In Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), the United States Supreme Court considered whether the law enforcement practice of "stop and frisk" violated the proscriptions of the Fourth Amendment to the United States Constitution.  In that case, a police officer became suspicious of two men who separately and repeatedly walked up and down a street peering into a store window. After each trek, the men talked to a third man up the street.  The officer, after observing this conduct for a short time, followed the suspects, stopped and frisked them, and discovered that two of them were carrying pistols.  Charged with the crime of carrying a concealed weapon, Terry moved to suppress the evidence on the basis that the stop and frisk were unconstitutional. The Court held that an investigatory stop is constitutionally permissible if the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed.  A frisk is warranted under Terry if the police officer has a reasonable suspicion supported by specific and articulable facts that the suspect is armed.  Id., 392 U.S. at 27, 88 S.Ct. at 1883;  Watkins, 827 S.W.2d 294.  Police also may constitutionally initiate an investigative stop of an automobile if the police have reasonable suspicion, supported by specific and articulable facts, that the occupants of the vehicle have committed a criminal offense or are about to commit a criminal offense.  Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981); Prouse, 440 U.S. at 663, 99 S.Ct. at 1401; Yeargan, __ S.W.2d at __; Watkins, 827 S.W.2d 294.

The facts forming the basis for an officer's reasonable suspicion need not rest upon the personal knowledge or observation of the officer. Indeed, in Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972), the Court rejected the argument "that reasonable cause for a stop and frisk can only be based on the officer's personal observation,"[7] and sustained a Terry investigative stop and frisk undertaken on the basis of a tip given in person by a known informant who had provided information in the past. In that case, a single police officer was on patrol duty in a high crime area, when, at approximately 2:15 a.m., a person known to the officer approached his cruiser with information that an individual seated in a nearby vehicle was carrying narcotics and had a gun at his waist. The officer called for assistance and then approached the vehicle to investigate the informant's report. The officer walked up to the parked car, tapped on the window, and asked the occupant to open the door. When Williams, the occupant, rolled down the window instead, the officer reached into the car and removed a loaded revolver from Williams' waistband. The gun was not in plain view, but it was located where the informant had indicated. Williams was arrested for unlawful possession of a handgun, and a search incident to the arrest revealed substantial quantities of heroin and other contraband. The Court upheld the constitutionality of the investigative stop and seizure and concluded that while the unverified tip may have been insufficient to support an arrest or search warrant,

_____

[7] Id., 407 U.S. at 146, 92 S.Ct. at 1923.

the information carried sufficient "indicia of reliability"[8] to justify an investigative stop. Id. 407 U.S. at 147, 92 S.Ct. at 1924.

Likewise, in Pulley, this Court upheld the constitutionality of an investigatory stop of a motor vehicle where the reasonable suspicion supporting the stop was derived from anonymous tips. Id., 863 S.W.2d at 29. There, the officer received a radio report that Terry Pulley was driving a yellow Ford L.T.D. in the Village Green Trailer Park, was armed with a shotgun, and was "supposed to shoot someone." On his way to the trailer park, the officer received another similar, urgent report. The officer arrived at the trailer park within ten to twelve minutes of the first report and did not find Pulley, with whom he was acquainted, to be there. The officer drove to a gas station about an eighth of a mile away and found Pulley parked in a yellow Ford. The officer stopped the vehicle, approached it, and asked Pulley to get out of the car. At that point, the officer, saw a shotgun lying on the front floorboard. Pulley was arrested for driving on a revoked license, for second offense driving under the influence of alcohol, and for possessing a loaded weapon, a hunting knife, and a billy club with the intent to go armed. Pulley filed a motion to suppress which was granted by the trial court upon a finding that the officer lacked reasonable suspicion to believe that the defendant had or would commit a crime. The Court of Criminal Appeals affirmed the trial court's judgment. We granted permission to appeal and reversed, finding that the

---

[8]At the time of the decision in Adams, the two-pronged veracity and basis of knowledge test was the standard employed by federal courts to analyze the reliability of an informant's tip. The federal courts did not adopt the "totality of the circumstances" test until 1983. See Illinois v. Gates, 462 U.S. 213, 102 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

officer had reasonable suspicion to initiate the stop.

In so holding, we recognized the inherent danger of false reports, through police fabrication or from vindictive or unreliable informants, which is present when an investigative stop is based upon the tip of an informant." Pulley, 863 S.W.2d at 31. We emphasized, however, that the federal and state courts have developed tests for assessing the reliability of informants' tips to guard against those dangers. In the context of evaluating the reliability of an informant's tip for probable cause determinations, we observed that Tennessee law requires a showing of both the informant's veracity or credibility and his or her basis of knowledge. Id.; see also, Jacumin, 778 S.W.2d at 436. While independent police corroboration can make up deficiencies, "each prong represents an independently important consideration that must be separately considered and satisfied in some way."[9]  Id.

We concluded that the Jacumin factors of credibility and basis of knowledge are helpful in determining whether a tip is sufficiently reliable to support a finding of reasonable suspicion. However, in so holding, we emphasized that

> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense

---

[9]We observed that the two-pronged test had been abandoned by the federal courts in favor of a "totality of the circumstances" approach which requires "[s]ome showing of veracity and some showing of basis of knowledge," but which allows for a "deficiency in one [prong] to be compensated for . . . by a strong showing as to the other." Gates, 462 U.S. at 223, 103 S.Ct. at 2329.

> that reasonable suspicion can arise from information that is less
> reliable than that required to show probable cause.

Pulley, 863 S.W.2d at 32, quoting Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990) (emphasis added). In other words, we recognized that the two-pronged test of reliability need not be as strictly applied if the informant's tip is being used to establish reasonable suspicion rather than probable cause. We emphasized that the circumstances in which a tip is given may sufficiently relate the informant's basis of knowledge, even in the absence of an explicit statement by the informant. Pulley, 863 S.W.2d at 32. We observed that if an informant reports an incident at or near the time of its occurrence, "a court can often assume that the report is first-hand, and hence reliable." Id. Moreover, if a call is contemporaneous with the police corroboration of the tip, it is reasonable to infer eyewitness reliability of the informant. Id. Police corroboration of several details of the informant's report may also satisfy unknowns about the informant's credibility. Id. Finally, we stated that the content, quality, and quantity of the information possessed by police must be assessed in determining whether it is sufficiently reliable to support a finding of reasonable suspicion. Id.

Applying the foregoing analysis to the facts in Pulley, we concluded that "[t]he timely nature of the report indicated an eye-witness basis of knowledge, and the corroboration of many of the informant's details, although not all, provided some basis to believe that the informant was credible." Id. at 34. Although the tip in Pulley could not have established probable cause to search or arrest, and

-13-

would not necessarily furnish reasonable suspicion under all circumstances, we concluded that, "given the threat of violence, the police had 'specific and articulable facts' to warrant the investigatory stop" in that case. Id.

We must apply the analysis outlined in Pulley to determine first whether the informant's tip was sufficiently reliable under Tennessee law and second whether the officer had reasonable suspicion to stop the defendant's vehicle. We first consider whether the credibility of the informant was sufficiently established. Unlike Pulley, the informant in this case was not anonymous. Officer Weaver knew the confidential informant and was aware that he or she was a convicted felon. Officer Weaver testified, however, that he had personally "interview[ed]" the informant on prior occasions and had previous contacts with the person as "a confidential informant." Though there is no explicit statement in the record that the informant had provided reliable information in the past, Officer Weaver testified that he considered the tip to be credible. In addition, several of the facts supplied by the informant, such as the location and direction of travel, the time of arrival, and the description of the car were corroborated by police before the stop was initiated and support the credibility of the informant. A showing that the informant's data is reliable may satisfy the credibility prong. State v. Ballard, 836 S.W.2d 560, 562 (Tenn. 1992). Moreover, the informant's statement predicted the defendant's future behavior. When significant aspects of an informant's predictions about future behavior are verified, there is reason to believe that the informant is honest and well informed. White, 496 U.S. at 332, 110 S.Ct. at 2417.

-14-

The preexisting relationship between Officer Weaver and the confidential informant, as well as the independent police corroboration of the facts predicting the defendant's future behavior given by the informant, sufficiently satisfy the credibility prong of the Jacumin test.

With respect to the second prong, we note that the informant in this case made no explicit statement conveying his or her basis of knowledge. However, as in Pulley, the circumstances under which the tip was given indicate that the informant was an eye-witness. Here, the confidential informant told Officer Weaver that the car in which the defendant was traveling was due to arrive in Selmer "any minute." The officers drove immediately to Highway 64 and found the vehicle described by the informant, occupied by the defendant and Brumley, thus confirming the content of the tip. The circumstances surrounding the tip, including the police corroboration of the facts supporting an eye-witness basis of knowledge, are sufficient to establish the informant's basis of knowledge under Jacumin.[10]

> As the United States Supreme Court recently has recognized,
>
> [a]rticulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are common sense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

---

[10]The defendant's reliance upon State v. Coleman, 791 S.W.2d 504 (Tenn. Crim. App. 1989), is misplaced. There, the informant previously had been arrested on other charges, but explicitly had never been utilized as an informant in any prior police investigations. In addition, the information was given to the officer two days before the alleged transaction was to occur, and the informant provided no explicit statement relating his basis of knowledge.

Ornelas, ___ U.S. at __, 116 S.Ct. at 1661.  In evaluating whether a police officer has a reasonable suspicion, supported by specific and articulable facts, a court must consider the totality of the circumstances. Watkins, 827 S.W.2d at 294; Cortez, 449 U.S. at 417, 101 S.Ct. at 695.  Circumstances relevant to the evaluation include, but are not limited to, the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. A court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him-- inferences and deductions that might well elude an untrained person.  Watkins, 827 S.W.2d at 294;  Cortez, 449 U.S. at 418, 101 S.Ct. at 695; Terry, 392 U.S. at 21, 88 S.Ct. at 1880.

> The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.  The Fourth Amendment requires some minimal level of objective justification for making the stop.

Sokolow, 490 U.S. at 7-8, 109 S.Ct. at 1585 (internal citations and quotations omitted).

Evaluating the totality of the circumstances of this case in light of the well-settled principles of law set forth above, we conclude that the stop of the defendant's vehicle was supported by reasonable suspicion.  Having established the informant's credibility and basis of knowledge, the information provided by the informant was that the defendant was transporting illegal drugs.  Based upon that information, police had reasonable suspicion to believe that a criminal offense was

being committed by the occupants of the vehicle. Therefore, the initial stop was constitutionally valid.

## B. Validity of Defendant's Consent to Search

The defendant next argues that the motion to suppress should have been granted because her detention during the subsequent search of her car and her person was unreasonable and exceeded the scope of a valid Terry stop, thereby rendering her consent to these searches involuntary. The State asserts the investigative detention was reasonable, and the search of her person and automobile were constitutional because based upon consent. We agree.

The United States Supreme Court has stated that when assessing whether a detention is too long to be justified as an investigative stop, the proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). Applying that standard to the facts in this case, it is clear the detention was not excessive. When Officer Weaver was given conflicting stories by the defendant and Brumley about the purpose of their trip to Memphis, he immediately informed them that the police had information that they were transporting illegal drugs. This exchange occurred less than five minutes after the stop was initiated. The defendant, at that point responded, "Well, you can look. You can search. I don't have anything." After the search of the car revealed nothing, Officer Weaver

immediately asked the defendant if she had anything on her person. At this point, the stop had been in progress for approximately ten minutes. Again, the defendant responded, "No. You can look all you want." Officer Weaver detained the defendant until Travis arrived less than five minutes later to conduct the body search. The contraband was discovered during this search. Clearly, the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly. The detention was not unreasonable.[11]

Having so concluded, we also reject the defendant's claim that her consent[12] was involuntary. "To pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). The defendant's unelicited statements of consent clearly meet this standard.

## CONCLUSION

For the reasons stated herein, we conclude that the confidential informant's tip as corroborated by independent police work, exhibited sufficient indicia of reliability to satisfy the two-pronged constitutional test of reliability, and provided

---

[11]The defendant's reliance upon State v. Morelock, 851 S.W.2d 838 (Tenn. Crim. App. 1992) is misplaced. In that case, the officer merely stopped the defendant for speeding and had no information that the defendant was committing any other criminal offense. Despite the complete lack of an objective basis for suspicion, the officer detained the defendant in his patrol car until she consented to a search of the passenger compartment of her car, and continued to detain the defendant, her sister, and her nieces and nephews, despite their repeated requests to leave, while he conducted a more extensive search with a drug dog. The circumstances clearly are distinguishable.

[12]The defendant also argues that her consent was involuntary because the trial court found she was in custody when it was given. The defendant fails to recognize that the trial court also explicitly found that the defendant was not subjected to custodial interrogation.

reasonable suspicion to justify the investigatory stop. The ensuing search which resulted in the seizure of contraband was based upon the defendant's voluntary consent and therefore was constitutionally valid. Accordingly, we affirm the judgment of the Court of Criminal Appeals upholding the trial court's denial of the defendant's motion to suppress.

_____
FRANK F. DROWOTA III,
JUSTICE

**Concur:**

Anderson, C.J.,
Birch, Holder, JJ
Reid, J. - Dissenting by Separate Opinion

FOR PUBLICATION

IN THE SUPREME COURT OF TENNESSEE

AT JACKSON

FILED

**February 23, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

STATE OF TENNESSEE,                    (

        Plaintiff-Appellee,            (

                                       ( McNairy County

                                       (

v.                                     ( Hon. Joe H. Walker,

                                       ( Judge

                                       (

                                       ( No. 02S01-9702-CC-00010

GRAPEL SIMPSON,                        (

                                       (

        Defendant-Appellant.           (


**DISSENTING OPINION**


        I dissent because the majority's decision represents a further erosion of constitutional protection against unreasonable searches and seizures.  I would find that the investigative stop in this case violates the Fourth Amendment to the Constitution of the United States and Article I, Section 7 of the Constitution of Tennessee, and reverse the conviction.

        In State v. Pulley, 863 S.W.2d 29 (Tenn. 1993),

this Court, following State v. Terry, 392 U.S. 1, 88 S. Ct. 1868 (1968), found that an investigative stop by police officers was not constitutionally unreasonable under certain limited circumstances. The Court in Pulley held: "Thus, the Fourth Amendment permits an investigative stop based on the corroborated tip of an informant in circumstances involving an immediate threat of danger." State v. Pulley, 863 S.W.2d at 31. The Court further stated: "The whole [United States Supreme] Court thus recognized [in Terry] that the seriousness of the criminal threat is an important factor in determining the reasonableness of a police response and the reliability required of an informant's tip. Id. at 33. After reviewing decisions from other states which had applied the Terry holding, this Court stated further: "These cases show that the gravity of the perceived harm is a crucial element in assessing the reasonableness of an investigative Terry stop." Id. Because the informant's tip in this case contains no threat of imminent danger or other exigent circumstances requiring immediate action by the police officer, it does not justify an investigative stop under Terry and Pulley. Therefore, I would hold the investigative stop was not justified. See State v. Yeargan, _____ S.W.2d _____, _____ (Tenn. 1997) (Reid, J., concurring) [slip op. at 25-27]; State v. Bridges, _____ S.W.2d _____, _____ (Tenn.

-21-

1997) (Reid, J., concurring and dissenting) [slip op. at 10-12].

Even if we assume that Yeargan and Bridges, and now the decision in this case, permit an investigative stop where there is reasonable suspicion that an offense not involving an imminent danger or other exigent circumstance is being committed, the stop in this case violates the constitutional prohibitions against unreasonable searches. Where, as in this case, the suspicion is based on an informant's tip, there must be corroboration of the informant's credibility and corroboration of the informant's basis of knowledge. State v. Pulley, 863 S.W.2d at 31; majority opinion at _____ [slip op. at 12]. The majority's struggle to find any corroboration of the informant's tip in this case was patently unsuccessful.

The majority finds that the informant's credibility was established by the officer's "preexisting relationship" with the informant and "independent police corroboration of the facts predicting the defendant's future behavior." Majority opinion at _____ [slip op. at 15]. The record does not show the nature or extent of the preexisting relationship between the officer and the informant. It does not show that

the informant previously had supplied reliable information to the officer. It shows only that the informant was, in the officer's conclusive language, a "confidential informant." There is in the record no objective fact indicating credibility. The fact that the informant was a convicted felon militates against a finding that he was a reliable informant.

The majority's finding of independent police corroboration is equally illusory. The "corroboration" relied upon was the description of the vehicle in which the defendant was travelling, that the vehicle was travelling on Highway 64 towards Selmer and that it would arrive at Selmer "any minute." From this, the majority finds that "the informant's statement predicted the defendant's future behavior." On this point, the majority relies upon <u>Alabama v. White</u>, 496 U.S. 325, 110 S. Ct. 2412 (1990), which does not support their position. In that case an officer of the Montgomery, Alabama Police Department received a telephone tip that the defendant White would be leaving a particular address at a particular time in a particular vehicle and would arrive at a particular destination. The informant told the officer that White would be in possession of an ounce of cocaine in a brown attache case. Thereafter, the officers

proceeded to the departure address where they observed the described vehicle in the parking lot. They observed White leave the building, get in the vehicle, and drive the most direct route towards the destination the informant had stated. When stopped short of that destination, she consented to a search. The officers found marijuana in the described brown attache case, and, while being processed at the police station after her arrest, the officers found three milligrams of cocaine in her purse. The court upheld the stop and subsequent search in that case, based on the independent corroboration by the police of significant aspects of the informant's predictions. Conceding that it was a close case, the Supreme Court noted that the tip "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." Id. at 332, 110 S. Ct. at 2417 (quoting Illinois v. Gates, 462 U.S. 213, 245, 103 S. Ct. 2317, 2335-36 (1983)). The court in White placed special significance on the informant's ability to predict the defendant's future behavior.

> [I]t demonstrated inside information - a
> special familiarity with respondent's
> affairs. The general public would have
> had no way of knowing that respondent

would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities . . . . When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest, but also that he was well informed, at least well enough to justify the stop.

Id.

The tip relied upon in the instant case demonstrated no "inside information" and gave no indication that the informant was honest or well informed about the defendant's affairs. The facts relied upon, an identified automobile proceeding along Highway 64 approaching Selmer, demonstrates no knowledge not equally available to dozens of other persons. Consequently, it provides no support for the majority's finding that the informant was credible.

The record contains no evidence for the finding that the informant's information was reliable, the second prong of the test to determine if the officer had reasonable suspicion. The majority acknowledges that the informant did

not disclose to the officer the basis of his tip, but the majority, somewhat incredibly, finds that the tip that the automobile in which the defendant was riding would arrive in Selmer "any minute" and that the automobile did in fact arrive in Selmer indicates that the informant was an "eyewitness." An eyewitness to what? That the automobile was legally preceding along Highway 64? Certainly. That the defendant was in possession of illegal drugs? Hardly! A basis of knowledge cannot be inferred from the corroboration of facts related only to innocent activity or matters open and obvious to anyone. State v. Bridges, _____ S.W.2d at _____ (Reid, J., concurring and dissenting) [slip op. at 9].

The facts of this case closely parallel those in State v. Coleman, 791 S.W.2d 504 (Tenn. Cr. App. 1989), in which the Court of Criminal Appeals found the investigative stop was illegal. In Coleman, an officer of the Robertson County Drug Task Force received a tip from an informant whom he had previously arrested and from whom he had never obtained confidential information in any police investigation. The informant told the officer that between 2 p.m. and 2:30 p.m. on August 10, 1988, a white female, 25 to 35 years old, with the first name of "Carla," would be driving an older model black Monte Carlo travelling from

Davidson County to Robertson County on Highway 431 South and that she would proceed to a location on Washington Road. According to the informant, "Carla" was in possession of several pounds of marijuana. There was no verification of the credibility of the informant or the reliability of the information provided. The only independently corroborated fact was that the car was registered to Carla Coleman, which the Court found was insufficient to justify the stop. In Pulley, this Court specifically approved the holding in Coleman that,

> while further independent corroboration may generally make up any deficiencies in an informant's tip, neither the informant's reliability nor his basis for knowledge was sufficiently substantiated in this case to establish the necessary "reasonable and articulable suspicion" required by our state constitution.

State v. Pulley, 863 S.W.2d at 31-32 (quoting State v. Coleman, 791 S.W.2d at 507).

Similarly, in the case before the Court, a tip from an informant of unproved reliability that a woman named Grapel Simpson would be driving a cream colored Oldsmobile on Highway 64 from Memphis to Selmer are not grounds for reasonable suspicion that an offense was being committed.

The defendant contends further that even if the stop was justified, there was no legal basis for the search which disclosed possession of illegal drugs. Necessary deference to the finder of fact forecloses reconsideration of the conclusion that the defendant consented to the search. Tenn. R. App. P. 13(e). However, the circumstances of this case dramatically demonstrate the "danger of false reports, through police fabrication or from vindictive or unreliable informants." See State v. Pulley, 863 S.W.2d at 31. The majority decision permits the body search of an innocent citizen on the side of a major highway in full view of the travelling public upon the uncorroborated snitch of a convicted felon. Surely, the decision is inimical to Article I, Section 7 of the Constitution of Tennessee, which declares "the people shall be secure in their persons, houses, papers, and possessions, from unreasonable searches and seizures."

I would hold the stop invalid and reverse the conviction.

_____
Reid, J.

-28-