# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
MAY 15, 2001 Session

## STATE OF TENNESSEE v. GONZALO MORAN GARCIA

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-C-2220      Steve Dozier, Judge**

---

**No. M2000-01760-CCA-R3-CD - Filed February 20, 2002**

---

John Everett Williams, J., dissenting.

After careful review of the record, I write separately because I reach a different conclusion than that expressed in the majority opinion with respect to the defendant's motion to suppress the evidence obtained during the search of his vehicle. I agree with the majority on all other matters raised in this appeal.

I conclude that the defendant's motion to suppress the evidence seized from the rocker panels of the vehicle should have been granted. The majority acknowledges the initial stop of this defendant was without reasonable suspicion and therefore, unlawful. In addition, I conclude the detention that followed was unreasonable for a number of reasons, any one of which was sufficient to render the continued detention unlawful. Furthermore, because the defendant's consent was so closely associated with the unlawful stop and detention, the taint of the unlawful stop and detention were not sufficiently removed to render the consent sufficiently an act of free will. For the foregone reasons, I would reverse the trial court's denial of the defendant's motion to suppress the evidence obtained during the search of his vehicle.

I re-emphasize, as the majority correctly points out, that the initial stop of this defendant was without reasonable suspicion to believe that the defendant was in violation of any law. It is clear from Officer Kohl's testimony and the video tape that the defendant's vehicle wove slowly from one side of the lane to the other and back again on at least two occasions. As was the majority, I am guided by our supreme court's holding in <u>Binette</u> that the weaving of an automobile within its own lane, which is neither "pronounced" nor "exaggerated," does not afford an officer reasonable suspicion of the driver's intoxication. <u>State v. Binette</u>, 33 S. W.3d 215, 220 (Tenn. 2000). Because the defendant's movement within his own lane of traffic was not pronounced or exaggerated, there was no reasonable basis for Officer Kohl to stop the defendant.

The initial illegal seizure was compounded by the continued illegal detention of the defendant. First, the continued detention of the defendant after the officer's initial brief encounter

and conversation with him was unreasonable. When assessing the reasonableness of a detention alleged to be justified as an investigative stop, "the proper inquiry is whether during the detention, the officer diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." State v. Simpson, 968 S.W.2d 776, 781 (1998). As Officer Kohl admits, her concerns about the defendant's possible intoxication and fatigue were alleviated after a brief conversation with the defendant. The officer did express concerns over the presence of a gallon of water and food bags located in the front seat of the car. In addition, the officer thought it strange that the defendant did not know the exact address he was going to in Georgia and was planning to call to get directions upon his arrival in Georgia. Notwithstanding such idiosyncracies, I see no reasonable basis for the officer's suspicions that the defendant was a drug courier. Clearly, this officer had a "hunch" that proved correct. Nevertheless, "hunches," no matter how many times they are correct, do not equate to a reasonable basis to detain. As the Supreme Court has repeatedly recognized, a search or seizure that is unlawful at it's inception may not be "validated by what it turns up." Wong Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Therefore, even if the officer's initial stop of the defendant had been supported by a reasonable suspicion that he was intoxicated, the continued detention of the defendant beyond that necessary to determine that he was not intoxicated was unlawful. To be clear, I conclude that the officer, after a brief conversation with the driver, should not have taken his drivers license and registration and detained him further.

Next, I find no authority for the detention of a citizen to issue a warning ticket under circumstances such as the ones in the instant case. A warning ticket may be issued when a driver has violated a traffic law or the officer has probable cause to believe a traffic offense has occurred. For example, if a driver is exceeding the speed limit by traveling 62 miles per hour in a 55 miles-per-hour zone, a violation of the traffic law has occurred, and the officer has probable cause to stop the vehicle and the authority to issue the driver a ticket. In addition, the officer has the discretion to issue a warning ticket, which has no fine, requires no court appearance, and does not affect the driver's insurance rating. Nothing in this opinion should be construed to suggest any impropriety in the issuance of a warning ticket under such circumstances.

In the instant case, however, the warning ticket was not issued under the typical circumstances. To begin with, the defendant had not violated the law or created a reasonable suspicion that he was violating the law. In addition, Officer Kohl acknowledged that her (unreasonable) suspicions concerning the defendant's intoxication and fatigue were dispelled after a brief conversation with the defendant. In short, the officer concluded the defendant was not intoxicated or fatigued to the point that he could not have continued his trip safely. As such, I am troubled by the officer's detention of this citizen for the purpose of issuing him a warning ticket. I question; what is the officer warning the defendant about? The officer asserts the warning ticket was to remind the defendant that he should pull over and rest if he should get sleepy in the future. This is tantamount to stopping a driver driving 64 miles per hour in a 65 mile-per-hour zone and issuing a warning ticket to remind the driver that he or she will be speeding if he or she drives two miles per hour faster. I know of no authority for the issuance of such a warning.

In the context of the instant case, the issuance of the warning ticket resulted in the continuation of an already unlawful detention, and appears to have been a pre-text to allow the officer the opportunity to prepare a consent to search form in Spanish. The warning ticket took some ten to twelve minutes to issue. A similar time frame for the issuance of a valid ticket is reasonable. However, the critical problem I see in this case is the fact that an otherwise law-abiding citizen was subjected to the same amount of detention as a full-blown law breaker. Under the circumstances, the continued detention of the defendant to prepare and issue a warning ticket was unreasonable.

Finally, I conclude that the consent to search was so closely related to the unlawful stop and continued unlawful detention that it cannot be viewed as "sufficiently an act of free will to purge the primary taint of the unlawful invasion." Wong Sun, 371 U.S. at 486. After returning his license and registration and giving him the so-called warning ticket, Officer Kohl informed the defendant that the stop was complete. However, the officer's statement that the stop was complete was negated by the defendant's poor understanding of English coupled with the fact that mere seconds elapsed before the officer effectively ordered him to return to the back of his vehicle to answer more questions. A citizen given a warning ticket, as issued in this case, would reasonably believe that they had broken the law and that, but for the generosity of the officer, they would be required to pay a fine, appear in court, and have their insurance rates increased. Placed in such a situation, the citizen would surely feel pressured to appear cooperative by consenting to the officer's request to search. Indeed, there is little doubt that some officers give warning tickets in order to facilitate a request for consent to search. I do not mean to suggest that the consent is involuntary when a citizen, who has broken the law and been given a warning ticket, gives consent out of a sense of obligation. However, when, as in the instant case, no law was broken and no probable cause or reasonable suspicion existed for the initial stop and continued detention, the officer may not use the unlawful seizure to exert pressure on the citizen to give consent to search.

As the majority points out, the causal connection between the illegal seizure and a consent to search must be broken to purge the taint of the illegal seizure. However, the majority goes on to conclude that the relationship between the unlawful detention and the consent to search was broken because of the presence of intervening factors such as Officer Kohl's "communication to the driver that he [was] free to leave prior to requesting consent to search and her advice to the driver of his right to refuse consent." I disagree. This mechanical application of such factors to validate the defendant's consent to search ignores the underlying question of whether the consent to search was obtained "by exploitation of the primarily illegality." My review of the record and video tape revealed a perfectly choreographed performance by the officer subjectively calculated to and objectively resulting in exploitation of the illegal stop and detention of the defendant in order to obtain his consent to search. Assuming arguendo that the purpose of the illegal stop was not to obtain consent to search the defendant's vehicle, the continued detention of the defendant under the guise of issuing a warning ticket was clearly in pursuance of a conscious objective to obtain consent to search. The officer used the time to fill out a consent to search form and radio for an officer and drug dog to assist with the search. After the canine drug unit arrived, and Officer Kohl finished preparing the consent to search form, the warning ticket was given to the defendant, he was told the stop was complete and immediately ordered by the officer's hand signals to come to the back of the vehicle. He was then asked permission to search his vehicle.

-3-

I conclude that the officer's misconduct was flagrant, and the purpose of the misconduct, i.e. the continued illegal detention of the defendant, was to obtain consent to search. Furthermore, the temporal proximity between the cessation of the unlawful seizure and the consent to search was mere seconds. Finally, there were no sufficient intervening circumstances to break the causal connection between the illegal seizure and the consent to search. The defendant was told he was free to leave only to be recalled before he could take two steps towards his car. The officer then presented him with a prepared consent to search form in Spanish, while the other officer looked on from his police vehicle waiting to conduct the search. I would, therefore, reverse the trial court's denial of the defendant's motion to suppress the evidence obtained during the search of his vehicle because the consent was derived without a sufficient break in the causal connection to the unlawful detention of the defendant to be sufficiently an act of free will to purge the primary taint of the unlawful detention.


                     _____

                     JOHN EVERETT WILLIAMS, JUDGE