IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 23, 2016 Session at Lincoln Memorial University[1]


**STATE OF TENNESSEE v. ARDELL ALLEN**


**Appeal from the Criminal Court for Sullivan County**
**No. S62065     R. Jerry Beck, Judge**

_____


**No. E2015-00825-CCA-R3-CD – Filed July 25, 2016**
_____


Based on a tip from a confidential informant, police stopped the Defendant and ultimately discovered cocaine in his pocket.  He was charged with possession of more than 0.5 grams of cocaine within 1,000 feet of a daycare, a Class B felony.  The Defendant filed a motion to suppress the evidence, which the trial court granted.  The State appeals, arguing that the confidential informant's credibility and basis of knowledge were sufficiently established, giving officers reasonable suspicion to seize the Defendant.  Following our review, we reverse the judgment of the trial court and remand the case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed; Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Barry Staubus, District Attorney General; and Josh D. Parsons, Assistant District Attorney General, for the Appellant, State of Tennessee.

Gene G. Scott, Jr., Jonesborough, Tennessee, for the Appellee, Ardell Allen.

---

[1] Oral argument was heard in this case before law students at Lincoln Memorial University's Duncan School of Law.

## OPINION

## FACTS AND PROCEDURAL HISTORY

At the motion to suppress hearing, Corporal Micah Johnson testified that around 5:30 or 6:00 p.m. on the date that the Defendant was arrested, he received a call from a confidential informant regarding the Defendant. Corporal Johnson testified that he had previously dealt with the confidential informant and that the confidential informant had provided the Kingsport Police Department with accurate information on five or six prior occasions over a period of three to four months. The confidential informant told Corporal Johnson that the Defendant "would be delivering a quantity of crack cocaine to the apartments at the corner of Charlemont and Broad Street." Corporal Johnson testified that he had known the Defendant for several years, and he knew that the Defendant drove a black, mid-sized Ford SUV with University of Tennessee tags. After speaking with the confidential informant, Corporal Johnson and Detective Daniel Lane proceeded to the apartment complex. Corporal Johnson testified that other marked patrol units were in the area and looking for the Defendant's vehicle, awaiting word from Corporal Johnson about how they should proceed.

The confidential informant called Corporal Johnson a second time and informed him that the Defendant "had just pulled up in front of the apartments" on the Charlemont side of the complex. While on the phone with the confidential informant, Corporal Johnson apprised Officer Rob Coffey that the Defendant had arrived and instructed him to stop the Defendant. At the time, Corporal Johnson was in the back alley of the apartment complex, several hundred yards away from the front of the complex. Officer Coffey got into his car and proceeded to the front of the building. Corporal Johnson and Detective Lane did not immediately accompany Officer Coffey because they were speaking with another individual. Corporal Johnson estimated that he arrived at the front of the complex one minute later. Corporal Johnson saw the Defendant at the front of the building, and police arrested the Defendant. Corporal Johnson testified that he did not participate in the search of the Defendant.

Officer Coffey testified that he had known the Defendant "for a long time" at the time of the stop. Officer Coffey had known the Defendant to drive a black Ford Escape with University of Tennessee tags for "[a]t least a year or two" and had seen the Defendant driving the vehicle multiple times. Officer Coffey testified that he went to the apartment complex "to assist Vice officers." Officer Coffey pulled into the back alley of the apartment complex and spoke with Corporal Johnson. Corporal Johnson was on the phone when he walked over to Officer Coffey and told him that the Defendant was "around front right now making a — supposed to be making a drug deal." Officer Coffey asked Corporal Johnson if the Defendant was still driving the black Ford Escape with

Tennessee tags, and Corporal Johnson responded affirmatively. Officer Coffey "immediately" got into his car and went to the front of the complex. He estimated that twenty or thirty seconds elapsed between his conversation with Corporal Johnson and his arrival at the front of the complex.

When Officer Coffey arrived at the front of the building, he saw the Defendant's car parked against the curb. Officer Coffey could see the back of the driver's head and that a woman was in the front passenger's seat. He also saw a second woman leaning in the passenger's side window. Officer Coffey started to exit his cruiser, and the woman leaning in the passenger's window saw the cruiser. Officer Coffey testified that the woman got "this wide-eyed look," and she began backing up as if to flee. Officer Coffey instructed her to stop, but she took several more steps backwards. As a result, Officer Coffey activated his blue lights and exited his cruiser. He estimated that he instructed the woman "four or five times not to run." The woman returned to the Defendant's car, and Officer Coffey approached the Defendant. He asked the Defendant what he was doing, and the woman in the passenger's seat started shouting, "What's this all about," continually interrupting Officer Coffey as he attempted to speak with the Defendant. Officer Coffey explained that he asked the Defendant to exit the car so that the two could speak because he could not effectively communicate due to the shouting of the female passenger. The Defendant willingly exited the vehicle, and Officer Coffey asked the Defendant if Officer Coffey could frisk him. The Defendant agreed, and after the frisk, Officer Coffey asked the Defendant if he would go to the rear of the police cruiser.

Officer Coffey continued to question the Defendant at his police car. He asked the Defendant what he was doing, and the Defendant "really couldn't provide an explanation. He mumbled around, wouldn't give why he was there." Officer Coffey asked the Defendant if he was in possession of any illegal narcotics. The Defendant replied that he was not while simultaneously placing "his left pocket up against the trunk" of Officer Coffey's cruiser. This behavior seemed suspicious to Officer Coffey, and he asked the Defendant if he could search him. Officer Coffey testified that the Defendant consented to the search. Officer Coffey discovered "a Kleenex that was neatly folded" in the Defendant's left pocket. He shook the Kleenex, and rocks of crack cocaine fell to the ground. After the cocaine fell to the ground, Officer Coffey informed the Defendant that he was under arrest.

Officer Coffey testified that he had received numerous drug complaints about the apartment complex in the past. He stated that he knew that the Defendant did not live in the apartment complex and that the woman leaning into the passenger's side window acted as though she was going to flee when Officer Coffey arrived. He explained that his observations and knowledge led him to believe that a drug transaction was taking place. He testified that even without the information from Corporal Johnson, he would have

3

stopped and investigated the scene. He said that he asked for consent to search the Defendant based on Corporal Johnson's information and his own observations of the scene. Officer Coffey testified that had the Defendant refused his consent to search, Officer Coffey would not have conducted the search. He testified that he was not aware of the possibility that cocaine was involved in the case.

On February 19, 2015, the trial court issued a written order granting the motion to suppress. The court found that the confidential informant was credible based on the fact that he had provided accurate information in earlier cases. The court found that the confidential informant did not describe a basis of knowledge concerning the impending drug transaction or a basis of knowledge that the Defendant possessed drugs. The court found that the State had not established specific reasonable suspicion that a criminal act was being or about to be committed. The court found that the Defendant was seized when Officer Coffey activated his blue lights and that this seizure was not supported by reasonable suspicion, invalidating the Defendant's subsequent consent to the search. On February 29, 2015, the trial court issued an order dismissing the Defendant's indictment. The State filed a timely notice of appeal.

## ANALYSIS

On appeal, the State argues that the trial court erred when it granted the Defendant's motion to suppress. The State contends that the confidential informant's credibility and basis of knowledge was established prior to the Defendant's seizure, providing Officer Coffey reasonable suspicion to seize the Defendant. The Defendant responds that the trial court properly granted the motion to suppress.

A trial court's factual determinations in a suppression hearing will be upheld on appeal unless the evidence preponderates otherwise. *State v. Odom,* 928 S.W.2d 18, 23 (Tenn. 1996). Questions regarding the credibility of witnesses, the weight or value of the evidence, and determinations regarding conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. *State v. Talley,* 307 S.W.3d 723, 729 (Tenn. 2010). "The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Williamson,* 368 S.W.3d 468, 473 (Tenn. 2012) (quoting *Odom,* 928 S.W.2d at 23). The trial court's application of the law to the facts is reviewed de novo. *State v. Carter,* 16 S.W.3d 762, 765 (Tenn. 2000).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution provide protection for individuals against unreasonable searches and seizures. *State v. Day*, 263 S.W.3d 891, 900-01 (Tenn. 2008). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a

4

result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

An exception to the warrant requirement is a brief investigatory stop of an automobile that is supported by reasonable suspicion. *State v. Keith*, 978 S.W.2d 861, 866 (Tenn. 1998); *State v. Simpson*, 968 S.W.2d 776, 781 (Tenn. 1998). "However, when law enforcement officials initiate an investigative stop as a result of information provided by an anonymous informant, Tennessee law requires some showing of both the informant's veracity or credibility and his or her basis of knowledge." *Keith*, 978 S.W.2d at 866 (citing *Simpson*, 968 S.W.2d at 781); *cf. State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn. 1989) (discussing the showing required when an anonymous informant's tip is relied upon to establish probable cause for the issuance of a warrant). Our supreme court has held that "'while independent police corroboration could make up in deficiencies in either prong [of the test for reliability], each prong represents an independently important consideration that 'must be separately considered and satisfied in some way.'" *State v. Pulley*, 863 S.W.2d 29, 31 (Tenn. 1993) (quoting *Jacumin*, 778 S.W.2d at 436).

When a confidential informant's tip is being used to establish reasonable suspicion, rather than probable cause, for an investigatory stop, "the two[-]pronged test of reliability is not as strictly applied." *Keith*, 978 S.W.2d at 866. Circumstances surrounding the tip, such as reporting an incident at or near the time of its occurrence or having contemporaneous police corroboration of the tip, may enhance the reliability of the tip. *Simpson*, 968 S.W.2d at 782. In evaluating whether a police officer has a reasonable suspicion, supported by specific and articulable facts, a court must consider the totality of the circumstances. *State v. Binette,* 33 S.W.3d 215, 218 (Tenn. 2000). "Those circumstances include the objective observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." *Day*, 263 S.W.3d at 903. Additionally, the court "must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

On numerous occasions, both this court and our supreme court have addressed the the use of an informant's tip as the basis of reasonable suspicion for a stop, and an examination of several of these cases is instructive in our analysis. In *State v. Coleman*, 791 S.W.2d 504 (Tenn. Crim. App. 1989), an informant told an officer "that between 2:00 and 2:30 p.m. on August 10, a white female, between 25 and 35 years of age and whose first name was Carla, would be en route to Robertson County from Davidson County on Highway 431 South." *Id.* at 504. The informant further told the officer that

the woman would be driving an older model black Monte Carlo, would be in possession of seven pounds of marijuana, and would ultimately drive to a location on Washington Road. *Id.* Officers had not used the informant in any previous investigations, and she provided no basis of her knowledge of the drug transaction. *Id.* Officers later spotted an older model black Monte Carlo traveling along the route predicted by the informant around 2:30 p.m., and a license plate check revealed that the driver's name was Carla Coleman. *Id.* at 505. After learning the driver's name, an officer turned on his blue lights and seized the defendant. *Id.* This court concluded that the stop was not supported by reasonable suspicion because neither the credibility of the informant nor the basis of her knowledge was established. *Id.* at 506-07. The court noted "[t]hat the car was in fact registered in the name of Carla Coleman, innocent in and of itself, was the only independently acquired fact supporting the tip's veracity." *Id.* at 506. The court observed that officers did not investigate the defendant's reputation regarding the use or sale of illegal drugs and that the stop occurred before she reached her predicted final destination. *Id.* The court also concluded that "[t]he tip was neither 'immediately verifiable at the scene' nor did it possess, even by way of inference, the basis for the informer's knowledge." *Id.* at 507.

Our supreme court addressed a similar set of facts in *State v. Simpson*, 968 S.W.2d 776 (Tenn. 1998). In *Simpson*, a confidential informant contacted a member of the sheriff's department and informed him that the defendant and a second individual were transporting 100 dilaudid pills from Memphis to McNairy County. *Id.* at 777. The informant told the officer that the defendant was traveling from Memphis on Highway 64 in a two-door, cream or beige colored Oldsmobile and would arrive in Selmer "any minute." *Id.* The officer indicated that he knew the informant "through previous contacts as a confidential informant" and that he considered the information reliable. *Id.* at 777-78. Officers proceeded to Highway 64, where they spotted the vehicle and stopped it based upon the information from the informant. *Id.* at 778. Our supreme court noted that the officer had previous contacts with the person as a confidential informant; that officers corroborated several facts provided by the informant, such as the location and direction of travel, the time of arrival, and the description of the car, before initiating the stop; and that the informant predicted the defendant's future behavior. *Id.* at 782. The court concluded that "[t]he preexisting relationship between [the officer] and the confidential informant, as well as the independent police corroboration of the facts predicting the defendant's future behavior given by the informant, sufficiently satisfy the credibility prong of the *Jacumin* test." *Id.* at 782. The court acknowledged that the informant did not make an explicit statement conveying a basis of knowledge, but the court concluded that "the circumstances under which the tip was given indicate that the informant was an eye witness." The court concluded that "[t]he circumstances surrounding the tip, including the police corroboration of facts supporting an eye-witness basis of knowledge, are sufficient to establish the informant's basis of knowledge under *Jacumin*." *Id.* at 782-

83. Additionally, the court distinguished *Coleman*, noting that the informant in *Coleman* had never been utilized as a confidential informant in any prior police investigations, officers received the information two days before the alleged transaction was to occur, and the informant provided no explicit statement relating his basis of knowledge. *Id.* at 783 n.11.

In *State v. Gonzalez*, 52 S.W.3d 90 (Tenn. Crim. App. 2000), a confidential informant contacted a police officer and told him that the defendant was "en route to purchase cocaine on Cadet Lane." *Id.* at 93. The informant indicated that the defendant would be a passenger in a blue Ford Taurus with damage to the driver's side and that the defendant would purchase the cocaine. *Id.* The officer was familiar with both the defendant and the blue Taurus, and a second officer testified that he had received information from the informant on prior occasions that led to arrests. *Id.* at 93, 94. The second officer also testified that the informant was not someone who would be at the drug sale. *Id.* at 94. One hour after receiving the tip, the officer had not received any additional information from the informant and did not know whether the defendant had purchased cocaine, but he saw the blue Taurus in a residential area where he was patrolling. *Id.* at 93. This court concluded that "there was limited evidence as to the informant's credibility, but absolutely no evidence as to the informant's basis of knowledge." *Id.* at 100. The court noted that the only information corroborated by officers, that the defendant was with another individual in a blue Taurus with damage to the driver's side, was "completely innocent" information. *Id.* The court observed that while the officer was familiar with the defendant and the blue Taurus, he did not see the defendant in the area where the informant said he was going to purchase cocaine. *Id.* The court further stated that the officer did not see the defendant until an hour after the informant told him that the defendant was "en route" to purchase cocaine. *Id.* Based on this evidence, the court concluded that the informant's information was not sufficiently corroborated and held that the tip did not provide the officer with reasonable suspicion to believe that the defendant had been involved in criminal activity. *Id.*

In *State v. Williamson*, 368 S.W.3d 468 (Tenn. 2012), which the trial court relied upon in denying the motion to suppress in this case, an anonymous tipster called 9-1-1 and reported "[a]n armed party and possible robbery in progress" at a motel. *Id.* at 470-71. The 9-1-1 dispatcher informed police officers of the complaint, and one officer "stated that the dispatch included 'a possible description of two subjects'" and that the defendant matched one of the descriptions. *Id.* at 471. The officer also testified that he was aware that the motel "was 'a place where local prostitutes, addicts, and sellers hang out.'" *Id.* Six officers were sent to the scene, with some remaining on the first floor while others proceeded to the second floor. *Id.* at 470. The defendant was on the second floor, and an officer frisked him after prompting from an unnamed person at the scene and discovered a small revolver. *Id.* at 470, 471. Our supreme court concluded that the

7

anonymous tip did not provide reasonable suspicion to seize the defendant. *Id.* at 480. The court noted that the tip did not describe the defendant or provide any "'predictive information,' which would allow police 'to test the informant's knowledge or credibility.'" *Id.* (quoting *Florida v. J.L.*, 529 U.S. 266, 271 (2000)). The court also observed that the possession of a firearm was not "per se illegal," and "the caller did not offer any articulable facts indicating that the Defendant unlawfully possessed a gun, and the information at the scene did not demonstrate the unlawfulness of its possession until after the frisk." *Id.* at 480, 481. While noting that "those cases in which the Supreme Court upheld stops and frisks occurring in high-crime areas have included significant other factors, such as the reliability of the informant or the police officer's own observations," the court concluded that none of these factors were present. *Id.* at 481.

Comparing the facts in the case *sub judice* with the facts in the above-cited cases, Corporal Johnson received information from a confidential informant that the defendant would be delivering crack cocaine to a specific apartment complex. Unlike the informants in *Coleman* and *Williamson*, who were simply anonymous tipsters, the confidential informant in this case was known to Corporal Johnson. He testified that he had previously utilized the informant and that the informant had provided accurate information regarding criminal investigations five or six times in the prior three or four months. Additionally, the informant accurately predicted the defendant's future behavior when the informant told officers that the defendant would be arriving at the apartment complex. *See Simpson*, 968 S.W.2d at 782.

The confidential informant identified the specific location at which the defendant would arrive, implying "an eyewitness basis of knowledge." *Pulley*, 863 S.W.2d at 32 ("When an informant reports an incident at or near the time of its occurrence, a court can often assume that the report is first-hand, and hence reliable."). Both officers testified that they were familiar with the defendant's black Ford SUV. Officer Coffey recognized the defendant's vehicle when he arrived at the location specified by the informant, thus "confirming the content of the tip" and indicating a basis for the informant's knowledge. *Simpson*, 968 S.W.2d at 782 (stating that officers confirmed the content of the informant's tip that the defendant's vehicle was due to arrive "any minute" when they "drove immediately to Highway 64 and found the vehicle described by the informant, occupied by the defendant"). Further, Officer Coffey testified that he had received "numerous drug complaints" at the apartment complex. Based on his own observations of the scene, Officer Coffey testified that as soon as he pulled his cruiser behind the Defendant's vehicle, and before he spoke to any of the people in and around the vehicle, it appeared as though a drug transaction was taking place. We conclude that the information from the confidential informant and Officer Coffey's personal observations were sufficient to create reasonable suspicion to justify a brief investigatory stop. Because the stop was lawful, the Defendant's subsequent consent to the search that

yielded the crack cocaine is also valid.  Accordingly, we reverse the judgment of the trial court, reinstate the charge against the Defendant, and remand the case for further proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing analysis, we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.


_____
JOHN EVERETT WILLIAMS, JUDGE

9