# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### AUGUST SESSION, 1998

FILED

December 18, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9801-CC-00024 |
| | ) | |
| Appellant, | ) | |
| | ) | FRANKLIN COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. BUDDY D. PERRY, JUDGE |
| GREGORY STEELE, | ) | |
| | ) | |
| Appellee. | ) | (MOTION TO SUPPRESS GRANTED) |

FOR THE APPELLEE:

**ROBERT S. PETERS**
SWAFFORD, PETERS & PRIEST
100 First Avenue, S.W.
Winchester, TN 37398

FOR THE APPELLANT:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**KAREN M. YACUZZO**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN 37243

**JAMES MICHAEL TAYLOR**
District Attorney General

**WILLIAM B. COPELAND**
Assistant District Attorney General
324 Dinah Shore Boulevard
Winchester, TN 37398

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The State of Tennessee (State) appeals from a judgment of the trial court suppressing evidence found pursuant to a search of Gregory Steele, the Defendant, by a law enforcement officer. The State appeals pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure on the basis that the trial court's order granting the motion to suppress had the substantive effect of dismissing the indictments against the Defendant. The two indictments charged the Defendant with DUI in violation of Tennessee Code Annotated section 55-10-401, and possessing methamphetamine, a Schedule II controlled substance, with the intent to sell or deliver in violation of Tennessee Code Annotated section 39-17-417. In this court, the state contends the trial court erroneously suppressed the evidence found by the officer. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issue presented for review, it is the opinion of this court that the judgment of the trial court should be affirmed.

Officer Jeff Perry of the Franklin County Sheriff's Department testified that he was on routine patrol on November 6, 1996. At approximately 2:30 a.m., he discovered a vehicle parked at Pleasant Grove boat dock with two (2) people apparently sleeping inside it. Although this was a public location with no restrictions on public parking, Officer Perry called in the license plate tag number to make sure the car was properly registered. He admitted on cross-examination that he had no reason whatsoever to believe that there had been any commission of a crime. After finding that the car was properly registered, Officer Perry exited his patrol car, walked up to the vehicle, then tapped on the window to perform a "welfare check" on the occupants of the car. After looking inside of the vehicle, he still did not

observe anything that would indicate that a crime was being committed. Officer Perry observed that the keys were in the ignition and the radio was playing, but the car was not running. He did not observe a weapon or any alcohol inside the vehicle. The Defendant was in the driver's seat. When he did not get a response, he tapped a little louder. The Defendant and his passenger then awoke.

When they both woke up, Officer Perry stated that "from looking at 'em," he could tell they were okay. On cross-examination, Perry stated that he "was trying to ascertain if they had -- if they had received it [damage or harm] up to this point, to check on 'em being out there at 2:30 in the morning . . . I didn't know if they'd been in a fight or what, I couldn't tell, I couldn't observe anything like that." He explained that "in my opinion a welfare check goes far beyond physical well-being. I mean there could be a mental distress there. They could be in an argument, they could have been involved in a domestic violence or domestic situation, anything of that nature."

As Officer Perry was still concerned about the occupants of the vehicle, he asked Defendant if he would step out of the car. Defendant exited the vehicle and Officer Perry noticed the odor of alcohol as soon as the vehicle's door opened. Defendant admitted that he had been drinking earlier. He patted down the Defendant and found a pocketknife in the Defendant's left front pocket. As Officer Perry was pulling the knife out of Defendant's pocket, a small lip balm type canister also came out. Defendant got nervous, so he asked him what it was. Defendant responded that he did not know what it was. Officer Perry looked inside the canister and found a white powdery substance.

At that point, Officer Perry asked Defendant to perform some field sobriety tests. After he explained the tests to the Defendant, the Defendant performed the tests unsatisfactorily to Officer Perry. Officer Perry described Defendant's demeanor as "real confused at the first of everything and then up until the last point that he knew he was going to be placed into custody his speech was slurred, he just seemed a little bit confused . . . and I couldn't get a whole lot out of him. "Defendant was then placed into custody for being under the influence and possession of a Schedule II narcotic.

The Defendant testified that on November 6, 1996, he parked his vehicle at the Pleasant Grove boat dock. He described that he was going through a divorce at that time and had been sleeping in his car. Wanting to have someone to talk with, Defendant asked one of his employees to accompany him that night after she got off work at midnight. They pulled in the parking lot at the boat dock to talk, but later fell asleep. Later that evening, he was awakened by Officer Perry. Defendant estimated that at that time they had been in the parking lot for approximately three (3) hours, as Officer Perry advised him that it was 3:20 a.m. Defendant thanked him for awaking them as he had to be at his business to start cooking breakfast. At that time, Officer Perry asked him to step out of the vehicle. Defendant considered it in his best interest to step outside. He was then asked by Officer Perry if he had been drinking. Defendant responded negatively and stated that he had been sleeping. Officer Perry then asked if Defendant had anything in his pockets, and Defendant answered that he had keys, a cigarette lighter, and some change. Officer Perry said, "Let me see," and then proceeded to run his hands down into Defendant's pockets. Defendant stated that he had no choice but to allow Officer Perry to search him. He could not recall if there was a pocketknife in his pocket that night.

When asked to perform field sobriety tests, Defendant was able to touch his nose with both hands, walk heel to toe, and then stand on one leg while holding the other foot approximately two (2) inches from the car's bumper. Defendant asked Officer Perry if he could wait a few minutes to perform the final balancing test as he had just woken up, but Perry refused. Defendant stated that he lost his balance and had to perform the test again. Defendant described that he had difficulty performing that test due to the fact he had just woken up.

Defendant testified that he did not drink any alcohol while at the boat dock, but he had consumed one (1) can of beer prior to picking up his employee. He also recalled that there was a "fifth" of George Dickel whiskey behind the seat on the floorboard underneath some other objects, but he had not consumed any of that whiskey that night. Defendant did admit that he had probably ingested some methamphetamines the morning before.

Stipulated evidence included test results from which it was determined that while Defendant had no alcohol in his blood, he did have methamphetamines in his bloodstream at the time of his arrest.

The trial court found that the Defendant was parked in a lawful public place and was not violating any laws. While Officer Perry had determined that the subjects of the vehicle were okay, he asked the Defendant to step out of the vehicle because he noticed an odor of alcohol. Given the fact that there was no alcohol in the Defendant's blood system, the trial court noted that it was unlikely that he smelled much there. The trial court determined that this was a situation "where the individual had a right to be there, and although I'm not faulting the officer in any way, and I

want to make that as clear as I can on the record, this is not a -- this is a case where it's appropriate for me to grant the motion to suppress, and I'm going to do so."

Upon review of the trial court's finding on a motion to suppress, this court should uphold the trial court's decision unless the evidence in the record preponderates against those findings. "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence, as well as all reasonable and legitimate inferences that may be drawn from the evidence. Id.

Upon review of the record, the evidence does not preponderate against the findings of the trial court. As the trial court correctly found, the Defendant's car was parked in a public place. While an officer may legitimately approach a vehicle parked in a public place and make a request for identification of the driver, this officer had already verified the car's registration and indicated in his testimony that the only reason he approached the vehicle was to verify the well-being of the occupants of that vehicle. State v. Pully, 863 S.W.2d 29, 30 (Tenn. 1993); State v. Butler, 795 S.W.2d 680, 685 (Tenn. Crim. App. 1990) (citations omitted). The application of this law to the facts found by the trial court is a question of law which this court reviews de novo. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998) (citing State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). The Defendant and his companion awakened after the officer tapped on the windows, and the officer verified that at that point he had determined the occupants were physically not in any danger. Until this point, the officer had been performing community caretaking

and/or public safety functions which involved no coercion or detention. State v. Rodney Hawkins, No. 03C01-9606-CC-00239, slip op. at 4, Loudon County (Tenn. Crim. App., at Knoxville, July 16, 1997) (*citing* United States v. Berry, 670 F.2d 583, 591 (5th Cir. 1982)). However, it is at this point that Hawkins is distinguishable from the case sub judice. In Hawkins, the defendant was found by the police parked "awkwardly" within the middle of the road having a conversation with a female companion who was standing outside of his vehicle. The female was drinking an alcoholic beverage. When the police officer approached Defendant Hawkins, he observed an open container of beer sitting between his legs, a white powdery substance near the vehicle's console and a plastic bag hanging from the console. Defendant in the case sub judice was parked lawfully in a public place, with no appearance of any alcohol or drugs apparent to the investigating officer.

Officer Perry admitted that the Defendant and his companion appeared to be "okay" when they awoke. The seizure and search of Defendant which followed this observation was based solely upon the officer's speculation that occupants of the car might have "mental distress" or had been involved in a "domestic situation." This is not enough to justify the seizure and search of Defendant by Officer Perry.

As the trial court correctly found, it was only when the officer requested that the Defendant step outside the vehicle that he noticed an odor of alcohol. The officer testified that he did not notice any alcoholic beverages in plain view nor did he notice any other suspicious criminal activity. After noticing the odor of alcohol, the officer asked the Defendant if he had been drinking and the Defendant admitted that he had. At that point, the officer proceeded to search and then perform field sobriety tests upon the Defendant. We agree with the trial court's findings that the

officer overstepped his bounds after he verified the physical condition of the Defendant and his companion. There is no evidence which preponderates against the trial court's findings that, under the totality of the circumstances, the officer did not have reasonable suspicion to detain the Defendant, i.e. seize and search Defendant after verifying his physical safety. This issue is without merit.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
JOSEPH M. TIPTON, Judge

_____
JOE G. RILEY, Judge