IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2003

## STATE OF TENNESSEE v. JOE CHARLES DEGRAFENREID

**Direct Appeal from the Circuit Court for Tipton County**
**No. 4202     Joseph H. Walker, Judge**

---

**No. W2002-00681-CCA-R3-CD  - Filed April 23, 2003**

---

The Defendant, Joe Charles Degrafenreid, was convicted by a jury of driving under the influence (DUI) as a second offender.  In this direct appeal, the Defendant argues that the evidence is insufficient to support his conviction for DUI and that the trial court erred by denying his motion to suppress.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Michael W. Whitaker, Covington, Tennessee, for the appellant, Joe Charles Degrafenreid.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Elizabeth Rice, District Attorney General; and Walt Freedland, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On the evening of September 4, 2000, Deputy John Cochran of the Tipton County Sheriff's Department was on patrol in a marked car.  Deputy Cochran noticed a blue pickup in front of him on Highway 59.  Deputy Cochran testified that the truck "was swerving back and forth across the lane."  The truck then "veer[ed] off the road into the gravel and then came back on the road and then made [a] left turn on to Mosley."  When he observed the vehicle leave the road, Deputy Cochran decided to initiate a traffic stop.  He then activated his emergency lights.  The driver of the pickup continued until he reached Mosley Avenue, where he turned left.  Deputy Cochran followed the truck until it turned into the first driveway on the left side of Mosley Avenue.

When the blue truck stopped in the driveway on Mosley Avenue, Deputy Cochran got out of his patrol car and approached the vehicle.  He recognized the driver of the pickup as the

Defendant, whom he had known prior to this incident. Deputy Cochran testified that as he approached the truck, he noticed the odor of alcohol. When the Defendant got out of the truck, Deputy Cochran smelled alcohol on his person. The deputy testified that the Defendant's speech was slurred, and he used the truck for support as he stood. Therefore, Deputy Cochran requested the Defendant to perform three field sobriety tests: the one-legged stand test, the finger-to-nose test, and the horizontal gaze nystagmus test.[1] Deputy Cochran testified that, with respect to the one-legged stand, the Defendant "couldn't even pick [his foot] up hardly." Therefore, the Defendant was unable to stand on one leg and maintain his balance. With respect to the finger-to-nose test, the Defendant failed to follow the deputy's instructions, and he was unable to touch his nose. In addition, Deputy Cochran testified that, throughout his performance of the field sobriety tests, the Defendant used his truck door for balance. Based on the Defendant's driving, the odor of alcohol, and his inability to properly perform the field sobriety tests, Deputy Cochran determined that the Defendant was under the influence of an intoxicating beverage. He thus decided to arrest the Defendant for DUI.

When Deputy Cochran arrived at the Tipton County jail with the Defendant, he requested the Defendant to take a breathalyzer test for the purpose of determining the alcohol and drug content of his blood. The Defendant refused to submit to the test, and he refused to sign the implied consent form.

The Defendant first argues that the evidence presented at trial is insufficient to support his conviction for DUI. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate

---

[1]Deputy Cochran admitted at trial that he was not certified to administer the horizontal gaze nystagmus test.

courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Our criminal code provides, in pertinent part, that

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys…while [u]nder the influence of any intoxicant . . . .

Tennessee Code Annotated § 55-10-401(a)(1). Deputy Cochran testified that he observed the Defendant's vehicle on Highway 59, and it was weaving within the lane. At one point, the Defendant's pickup went off the road. Upon initiating a traffic stop, the deputy smelled alcohol about the Defendant and his truck. When the Defendant spoke, his speech was slurred. The Defendant was unable to perform either the one-legged stand test or the finger-to-nose test, and while Deputy Cochran was administering the tests, the Defendant used the door of his truck to maintain his balance. In the officer's opinion, the Defendant was under the influence of an intoxicant This evidence entitled the jury to find beyond a reasonable doubt that the Defendant committed the crime of DUI. This issue is without merit.

The Defendant also argues that the trial court erred by denying his motion to suppress. He asserts that any evidence recovered as a result of Deputy Cochran's investigation should be suppressed because the deputy lacked reasonable suspicion to perform a traffic stop.

Our supreme court has stated the standard of review of a trial court's rulings on suppression issues as follows:

Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise. We also note that this standard review is consistent with Tenn. R. App. P. 13(d), which provides that in civil cases, findings of fact by a trial court are presumed correct "unless the preponderance of the evidence is otherwise." Hereafter, the proper standard to be applied in reviewing suppression issues is the "preponderance of the evidence" standard. The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo.

State v. Yeargan, 958 S.W. 2d 626, 628-29 (Tenn. 1997) (citations omitted).

We must first determine whether the detention of the Defendant by Deputy Cochran amounted to a seizure. If so, we must then determine whether Deputy Cochran possessed an articulable, reasonable suspicion for an investigatory stop under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, (1968), and its progeny. In Terry, the Supreme Court stated that not every encounter between a policeman and a citizen is a seizure. 392 U.S. at 19 n.16. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. In United States v. Mendenhall, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497, (1980), the Supreme Court stated, "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." 446 U.S. at 554.

In this case, Deputy Cochran observed the Defendant's truck weaving within its lane and briefly leave the pavement. The deputy activated his blue lights and followed the Defendant onto Mosley Avenue until the Defendant pulled into a driveway and got out of the truck. At that point, the deputy began his investigation, which included the administration of field sobriety tests. We conclude that the stop of the Defendant's vehicle was a seizure under both the United States and Tennessee Constitutions.

Next, we must determine whether Deputy Cochran possessed an articulable, reasonable suspicion for an investigatory stop under Terry v. Ohio. Police may constitutionally initiate an investigatory stop of an automobile if they have reasonable suspicion, supported by specific and articulable facts, that the occupant of the vehicle has either committed a criminal offense or is about to commit a criminal offense. See State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). When evaluating whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. See State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).

Deputy Cochran witnessed the Defendant's vehicle weave back and forth across the lane, touch the center line, and go off the road before he initiated an investigatory stop. This Court has considered other cases in which a defendant's weaving in his or her lane of traffic has been one of the factors considered in assessing whether reasonable suspicion existed. See, e.g., State v. Floyd Lee Williamson, No. 02C01-9803-CC-00085, 1999 WL 177569, at *1 (Tenn. Crim. App., Jackson, April 1, 1999); State v. Stuart Allen Jenkins, No. 01C01-9712-CR-00590, 1998 WL 917806, at *3 (Tenn. Crim. App., Nashville, Dec. 21, 1998). Furthermore, our supreme court has addressed the issue. In State v. Binette, 33 S.W.3d 215 (Tenn. 2000), a police officer stopped the defendant after observing him weaving within his lane of travel. The court stated that the key to finding reasonable suspicion is not "[t]he number of times that a vehicle touches the center line or drifts within a lane…. Rather…a court must consider the totality of the circumstances in determining whether reasonable suspicion was present at the time a stop was initiated." Id. at 219. The court observed that allowing a finding of reasonable suspicion based upon only minor imperfections in driving would create a "stop at will" standard that would violate the protections of the Fourth Amendment. Id. In reversing the defendant's conviction, the court noted that the defendant's movement within his lane "was not

pronounced, and therefore did not give rise to reasonable suspicion that he was under the influence of an intoxicant." Id. at 220. Finally, in considering whether driving on the white line and changing lanes without signaling supported a finding of reasonable suspicion, this Court contrasted prior decisions in which there had been evidence of "erratic driving or weaving while driving" and held that no finding of reasonable suspicion could be made absent evidence that the defendant "was driving erratically, weaving, or otherwise causing a hazard to other vehicles." State v. Smith, 21 S.W.3d 251, 258 (Tenn. Crim. App. 1999).

In the present case, Deputy Cochran testified that he observed the Defendant's vehicle weaving within its lane of travel on Highway 59. In addition, the deputy stated that, at one point, the Defendant's pickup went off the road. The trial judge found the officer to be credible. It is our opinion that the deputy's testimony describes the type of pronounced, erratic driving that may form the basis for reasonable suspicion to justify a traffic stop. See Binette, 33 S.W.3d at 220. Therefore, the trial court did not err by denying the Defendant's motion to suppress.

The judgment of the trial court is affirmed.

 

_____
DAVID H. WELLES, JUDGE