# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 7, 2004

## STATE OF TENNESSEE v. JON SEILER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-01811    Arthur T. Bennett, Judge**

---

**No. W2004-00702-CCA-R3-CD  - Filed December 30, 2004**

---

The Defendant, Jon Seiler, pled guilty to driving under the influence of an intoxicant ("DUI"), second offense.  Pursuant to Tennessee Rule of Criminal Procedure 37, the Defendant reserved as a certified question of law the issue of whether the trial court erred when it denied his motion to suppress.  Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Leslie I. Ballin and Gray W. Bartlett, Memphis, Tennessee, for the appellant, Jon Seiler.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Brooks Yelverton, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I.  Facts

This case arises from the Defendant's arrest and subsequent conviction for DUI that occurred on July 21, 2002.  Prior to entering a guilty plea, the Defendant filed a motion to suppress his statements contending that they were given to police after an illegal search and seizure.  The trial court denied the Defendant's motion, and the Defendant pled guilty to DUI, second offense, reserving a certified question of law regarding whether the motion to suppress was improperly denied.  At the hearing on the Defendant's motion to suppress, the following evidence was presented.

A. C. Brown, an officer with the Memphis Police Department, testified that he had received DUI training while employed with the police department.  He said that, from this training, he learned that some indicators of potential DUI offenders are: erratic swerving; inability to drive in one lane; veering over into oncoming traffic; making wide turns; and driving without the benefit of headlights.

The officer testified that, on July 21, 2002, at approximately 3:35 a.m. he was called to the scene of an accident to assist another officer. Officer Brown said that, while at the accident scene, he noticed a pick-up truck traveling at what he "perceived to be a high rate of speed" toward the accident area. He said that, as the pick-up truck got closer, he noticed that the vehicle's driver's side tires were in one lane and the passenger side tires were in the other lane, and the vehicle was "straddling the white dotted line." The officer said that this was a violation of city and state law.

Officer Brown testified that he then got into his police car and turned behind the pick-up truck as the pick-up truck stopped at a traffic light. The officer said that the driver of the pick-up truck still had the car positioned with "the driver side wheels of the vehicle in the center lane and the passenger side wheels of the vehicle in the right lane." The officer said that he stopped the pick-up truck, and he approached the driver's side window. The officer said that he shined his flashlight into the truck, and there was no response from the driver, who was the Defendant. The officer then tapped on the window with the end of his flashlight, and the Defendant still did not respond. The officer tapped on the window again, and the Defendant rolled his window down. The officer said that he then asked the Defendant for his driver's license, and, as the Defendant began talking, the officer could smell alcohol from inside the truck. He said that he noticed that the Defendant's eyes were red and watery, and the Defendant's speech was "somewhat slurred."

The officer asked the Defendant to exit his truck and to submit to three field sobriety tests. Officer Brown testified that the Defendant "seemed to be somewhat unsteady on [his] feet" and "used the vehicle for support" when he first exited the truck. The officer said that he requested that the Defendant recite the English alphabet from A to Z, and the Defendant "hesitated on several letters and . . . upon approaching the letter 'Q', he went from the letter 'Q', skipping several letters, to the letter 'V'." Officer Brown said that he also requested that the Defendant stand with either foot off of the ground, approximately six inches in front of him, looking down at his foot while doing so, and to count from 1001 to 1030. The officer said that, during this test, the Defendant placed his foot on the ground several times. The officer testified that the Defendant also failed a "walk and turn" test by stumbling from a standing position. Officer Brown said that, from the Defendant's performance on these tests, he believed that the Defendant was under the influence of alcohol.

On cross-examination, the officer testified that all of the factors that led him to believe that the Defendant was intoxicated occurred after his initial stop of the Defendant. The officer said that, at the time of the incident, the traffic in the area was light. The officer testified that, when he first observed the Defendant's truck, the truck was approximately one quarter of a mile away from the officer. Officer Brown said that it took the Defendant approximately five to six seconds to approach the officer, and Officer Brown could not positively testify that the Defendant's speed exceeded forty miles per hour. The officer said that, in total, he viewed the Defendant's vehicle for approximately ten seconds before stopping the vehicle. The officer conceded that, because there was little traffic, no other vehicle was in danger from the Defendant's driving. The officer said that he did not charge the Defendant with straddling lanes, but rather charged him with reckless driving.

On redirect examination, the officer testified that, at the time that he stopped the Defendant, he had a reasonable suspicion that the Defendant had committed a crime.

The trial court denied the Defendant's motion to suppress and found that the officer had a reasonable suspicion to stop the Defendant's vehicle, stating:

This officer . . . was out there at another accident.  I guess it was an accident [that] somebody was towing.  And for an officer to stop that to go after that one, then apparently something caught his attention.  He just didn't stop and go after every[body] that passed there.

He saw something that caused him to think that this man may be in some violation and got in behind him.  He didn't observe him long, from what he testified to.  But, for an officer to leave one scene while it's in progress to go after somebody passing by, [something] must have got his attention.  Something that caused the officer to feel that he needed to go behind this citizen just passing by.

And the officer did testify that they were out there and although no other cars were going by at that time . . . or coming in the opposite direction of him at that time . . . he observed him a few seconds after getting in his squad car and going behind him.  And he still stayed splitting the center lane, partly [in] the right [lane] and . . . [partly] in the center lane.  That tells me something.

In other words, although he was going straight [toward the officer] like that, [the officer] could not say . . . [to] a person who drives . . . facing other traffic . . . "Well, I can't go after him, because he's driving straight down there on the opposite side of the street, coming right at me.["] The officer had to do that.  That's reckless if somebody's taking up another lane.  Not just whipped over there, temporarily and c[oming] back, or something [that] didn't continue.  But to stay in a, a possible opposing lane, where someone may be coming, then the officer has an obligation to check that person out, stop that person.  Because, an accident could occur in that situation.

The Court's of the opinion that the officer had reasonable suspicion to stop the vehicle, based on that.  And this is not a situation where you were sitting there in a still situation, watching to see if anybody's violating traffic laws.  He was at another scene.  That tells me that something caused him to leave that scene to go after someone passing by.

The Court's of the opinion that the officer had reasonable suspicio[n] to believe that [the Defendant] was violating the law, traffic laws and had a right to stop him.  And the Court will not grant your motion to suppress this particular stop.

The Defendant pled guilty to DUI, second offense, reserving a certified question of law. The trial court entered an agreed order that articulated the Defendant's certified question of law as, "Did the Court err in denying the Defendant's Motion to Suppress this stop of his motor vehicle on July 21, 2002?"

## II.  Analysis
### A.  Certified Question of Law

Because this appeal comes before us as a certified question of law, pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the question presented is dispositive.  Tennessee Rule of Criminal Procedure 37(b) provides, in pertinent part, that:

> An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction . . . upon a plea of guilty [if] . . . [the] defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case and the following requirements are met:
>
> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by the defendant for appellate review;
> (B) The question of law must be stated in the judgment or document so as to identify clearly  the scope and limits of the legal issue reserved;
> (C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and
> (D) The judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2)(i) (2004) (amending the rule to include the four specific conditions set forth in subsection (b)(2)(i) above, effective July 1, 2002); see also State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988).  Because all of the evidence indicating that the Defendant was under the influence of alcohol was obtained after the stop that he is challenging, were we to conclude that the stop was unconstitutional there would be no evidence to support the Defendant's DUI conviction. Accordingly, we agree with the trial court, and the parties, that the certified question of law is dispositive in this case.  The prerequisites for the consideration of the merits of a certified question of law have been met, and, therefore, we begin our analysis of whether the officer was justified in stopping the Defendant's vehicle.

### B.  Motion to Suppress

The Defendant contends that the trial court erred when it denied his motion to suppress

because the officer did not have a reasonable suspicion to stop his vehicle. The standard of review for a trial court's findings of fact and conclusions of law in a suppression hearing was established in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). This standard mandates that "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. at 23; see State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The prevailing party in the trial court is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Furthermore, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. However, this Court reviews the trial court's application of the law to the facts de novo, without any deference to the determinations of the trial court. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. Odom, 928 S.W.2d at 22-23; see State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, and Article I section 7 of the Tennessee Constitution, protect citizens against unreasonable searches and seizures.

> Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement.

State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998). The federal and state constitutions' prohibitions against unreasonable searches and seizures also apply to vehicles. Simpson, 968 S.W.2d. at 780. Accordingly, we must first determine whether the detention of the Defendant by the police officer amounted to a seizure. If so, we must then determine whether the officer possessed an articulable reasonable suspicion for an investigatory stop under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Terry, 392 U.S. at 19 n.16; State v. Hord, 106 S.W.3d 68, 70 (Tenn. Crim. App. 2003). The Supreme Court stated that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980); Hord, 106 S.W.3d at 71. Further, our Supreme Court has stated that "When an officer turns on his blue lights, he or she has clearly initiated a stop . . . [and the vehicle's driver is] 'seized' within the meaning of the Terry decision." State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993).

In the case under submission, it is clear that the Defendant was "seized" within the meaning of the State and Federal Constitutions. Officer Brown testified that he turned on his lights and stopped the Defendant's vehicle. Therefore, it is clear that the Defendant was "seized" within the

meaning of the Terry decision. Thus, in order for the stop to be constitutionally valid, at the time that Officer Brown turned on his vehicle's blue lights, he must have had reasonable suspicion, supported by articulable facts, that the Defendant had committed, or was about to commit a criminal offense.

Police may constitutionally initiate an investigatory stop if they have reasonable suspicion, supported by specific and articulable facts, that a person has either committed a criminal offense or is about to commit a criminal offense. Terry, 392 U.S. at 20-21; State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002); Simpson, 968 S.W.2d at 780. In evaluating whether a police officer has reasonable suspicion supported by specific and articulable facts, a court must consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417 (1981); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). "This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." Watkins, 827 S.W.2d at 294; see Cortez, 449 U.S. at 418. "A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." Watkins, 827 S.W.2d at 294; see Terry, 392 U.S. at 21. "Finally, the content, quality, and quantity of information possessed by police must be assessed in determining whether it is sufficiently reliable to support a finding of reasonable suspicion." State v. Keith, 978 S.W.2d 861, 867 (Tenn. 1998).

> The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.

Keith, 978 S.W.2d at 867 (quoting United States v. Sokolow, 490 U.S. 1, 7-8 (1989)). As a general rule, the stop of an automobile is constitutionally reasonable, under both the state and federal constitutions, if the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred. State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997); State v. Willie Norman, No. W2003-02067-CCA-R3-CD, 2004 WL 2255253, at *6 (Tenn. Crim. App., at Jackson, Oct. 7, 2004), *no perm. app. filed* (holding that a police officer had reasonable suspicion to stop a defendant because the defendant ran a stop sign and had his music playing "extremely loud").

The Defendant asserts that his actions did not give Officer Brown reasonable suspicion to stop his vehicle pursuant to State v. Binnette, 33 S.W.3d 215 (Tenn. 2000), and State v. John Crawley, Sr., No. M2003-01289-CCA-R3-CD, 2004 WL 112867 (Tenn. Crim. App., at Nashville, Jan. 23, 2004), *perm. app. denied* (Tenn. June 21, 2004). In Binnett, the State asserted that the officer had reasonable suspicion to stop the defendant because the defendant was: (1) traveling on a road at about midnight; (2) it was not raining, and the weather was not inclement; (3) there was no construction and no traffic of any consequence; (4) the videotape shows that, in a two minute time period, the defendant's car appears to touch the center lane at least four times; and (5) the videotape also shows that the defendant's car made a sudden swerve within his own lane. Binnett, 33 S.W.3d at 218. The Tennessee Supreme Court reviewed a video of the defendant's driving and held that any

movement by the defendant was "clearly not exaggerated," and showed the defendant "proceeding correctly through a number of intersections and stop lights and maintaining appropriate distances behind vehicles that he was following." Id. The Court noted that the defendant did not, on the videotape, violate any traffic ordinances. Id. Similarly, in Crawley, this Court reviewed a videotape of a traffic stop and concluded that the defendant's actions while driving, of pausing at a yield sign for fifteen to twenty seconds and driving into the opposite lane of a street that did not have painted lines, did not give a police officer reasonable suspicion to stop the defendant's vehicle. The Crawley court held that the defendant paused for an extended period because he was not familiar with that area and any drifting by the defendant was due to a car parked on the side of a road. The court noted that the video showed that the defendant stopped at two stop signs and activated his turn signal before initiating two turns.

Both Binnett and Crawley are distinguishable from the case currently before us, in multiple regards. First, in both of those cases the Court was able to review videotape evidence showing the defendants' driving. Here, we have no such evidence and we must rely on Officer Brown's testimony, which was deemed credible by the trial court. Second, in both Binnett and Crawley the defendants did not clearly commit a traffic violation, which would give the police reasonable suspicion to stop the defendants. Conversely, in this case, Officer Brown testified that he believed that the Defendant was speeding, and the Defendant was driving over the center lane for an extended period of time. Further, the Defendant was driving toward the officer and the accident scene, and he was drifting toward the side of the road where the officer and the accident scene were located. Tennessee Code Annotated section 55-8-123 (2003) provides that:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety;
>
> (2) Upon a roadway which is divided into three (3) lanes, a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle where the roadway is clearly visible and such center lane is clear of traffic within a safe distance, or in preparation for a left turn or where such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding and is signposted to give notice of such allocation . . . .

We conclude that the evidence does not preponderate against the trial court's determination that the Defendant's actions of crossing the center lane constituted a traffic offense, giving Officer Brown reasonable suspicion to stop the Defendant's vehicle. The officer testified that the Defendant crossed into the center lane for an extended period of time, straddling the Defendant's proper lane and the center lane. After the officer began following the Defendant, the Defendant continued to drive in

both lanes, straddling the center line.  The trial court found that the officer had a reasonable suspicion to stop the Defendant because the Defendant was traveling in the two lanes of traffic for an extended period of time, and his driving could cause an accident.  Furthermore, the Defendant committed a traffic violation, which gave Officer Brown reasonable suspicion to stop the Defendant. This issue is without merit.

### III.  Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE