IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 9, 2006 Session

## STATE OF TENNESSEE v. MARKUS K. HARTLEY

**Appeal from the Circuit Court for Williamson County**
**No. I-CR09589    Jeff Bivins, Judge**

_____

**No. M2005-02523-CCA-R3-CD - Filed July 25, 2006**

_____

The appellant, Markus K. Hartley, was indicted by the Williamson County Grand Jury for driving under the influence, fourth offense. The appellant filed a motion to suppress the evidence, arguing that the police did not have probable cause to stop his vehicle. The trial court denied the motion to suppress the evidence. Subsequently, the appellant pled guilty to driving under the influence, second offense, but reserved a certified question of law to determine whether the trial court properly ruled on the motion to suppress. Because the trial court properly denied the motion to suppress, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

David H. King, Franklin, Tennessee, for the appellant, Markus Hartley.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Ron Davis, District Attorney General; and Georgia Felner, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 13, 2004, the Williamson County Grand Jury indicted the appellant for driving under the influence, fourth offense. The appellant subsequently filed a motion to suppress in which he argued that "all the evidence gathered against him [had] been procured by an illegal and improper stop of his automobile."

At the suppression hearing, Officer Craig Wright testified that he was patrolling the Cool Springs area near the mall in Franklin, Tennessee, during the early morning hours of May 6, 2004.

Even though Officer Wright was on routine patrol, he had been instructed by his superior officer to "pay particular attention" to the restaurant areas due to the Cinco de Mayo holiday on May 5.

While on patrol in the area, Officer Wright encountered the appellant walking on foot in the mall parking lot area. The appellant crossed the street in front of Officer Wright's patrol car, and the appellant's "unsteadiness on his feet . . . alerted" Officer Wright's attention. According to Officer Wright, the appellant was "swaying" and appeared like he was "almost tripping over something" as he was walking. Though Officer Wright felt that the appellant "presented a danger to himself or to others at that point" due to his "walking in the parking lot," the officer merely observed the appellant because he was already en route to a "welfare check" on another man vomiting in the parking lot about ten feet away.

As Officer Wright was performing the "welfare check", he saw the appellant in a nearby parking lot leaning against a car. When the "welfare check" was completed, approximately eight to ten minutes later, Officer Wright proceeded to the parking lot where he saw the appellant leaning against the car. At that point, Officer Wright saw a car backing out of a parking space in the parking lot. Officer Wright felt he was "pretty sure" that the car was the same car that the appellant was leaning against during the "welfare check". The car pulled forward at that point and parked in a space next to another car. Officer Wright pulled in behind the car, activated his blue lights, and initiated a traffic stop at that time.[1] The appellant was the driver of the car. The facts at the suppression hearing were undisputed.

At the conclusion of the hearing, the trial court determined that "the defendant's state and federal constitutional rights were not violated and the stop was not an illegal one" and denied the motion to suppress.

Subsequently, the appellant pled guilty to driving under the influence, second offense. The trial court sentenced the appellant to confinement for eleven months and twenty-nine days and fined the appellant $600. The trial court suspended all but forty-five days of the sentence, and agreed that the appellant would receive jail credit for up to twenty-eight days of inpatient treatment. The trial court also ordered the appellant to follow all aftercare directives and suspended the appellant's driving privileges for two years. Pursuant to the plea agreement, the appellant reserved the right to appeal a certified question of law challenging the trial court's denial of his motion to suppress. See Tenn. R. Crim. P. 37(b)(2)(i). The appellant filed a timely notice of appeal. On appeal, the appellant presents the following certified question of law: "Did the trial court err when it failed to grant Defendant's motion to suppress the evidence gathered against the Defendant as a result of an improper and illegal stop?"

---

[1]From the transcript of the suppression hearing, it appears that a videotape of the traffic stop was entered into evidence and reviewed by the trial court during Officer Wright's testimony. For unknown reasons, the videotape is not part of the record on appeal.

<u>Analysis</u>

The appellant argues on appeal that there was no reasonable suspicion for Officer Wright to stop his car. Specifically, the appellant argues that the totality of the circumstances demonstrates a lack of reasonable suspicion because Officer Wright testified to a mere "possibility" that the appellant was the person driving the car. The State argues that the trial court properly denied the motion to suppress.

The trial court's findings of fact in a suppression hearing will be upheld on appeal unless the evidence preponderates against those findings. <u>State v. Odom</u>, 928 S.W.2d 18, 23 (Tenn. 1996). Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. <u>Id.</u> The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. <u>Id.</u> However, the application of the law to the trial court's findings of fact is a question of law subject to <u>de novo</u> review. <u>State v. Yeargan</u>, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, and Article I section 7 of the Tennessee Constitution, protect citizens against unreasonable searches and seizures. Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to one of the narrowly-defined exceptions to the warrant requirement. <u>State v. Simpson</u>, 968 S.W.2d 776, 780 (Tenn. 1998). The federal and state constitutions' prohibitions against unreasonable searches and seizures also apply to vehicles. <u>Simpson</u>, 968 S.W.2d. at 780. Accordingly, we must first determine whether the detention of the appellant by the police officer amounted to a seizure. If so, we must then determine whether the officer possessed an articulable reasonable suspicion for an investigatory stop under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), and its progeny. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." <u>Terry</u>, 392 U.S. at 19 n.16; <u>State v. Hord</u>, 106 S.W.3d 68, 70 (Tenn. Crim. App. 2003). The Supreme Court stated that "a person has been seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980); <u>Hord</u>, 106 S.W.3d at 71. Further, our supreme court has stated that "[w]hen an officer turns on his blue lights, he or she has clearly initiated a stop . . . [and the vehicle's driver is] 'seized' within the meaning of the <u>Terry</u> decision." <u>State v. Pulley</u>, 863 S.W.2d 29, 30 (Tenn. 1993).

In the case herein, it is clear that the appellant was "seized" within the meaning of the state and federal Constitutions. Officer Wright testified that he turned on his lights and stopped the appellant's vehicle. Thus, in order for the stop to be constitutionally valid, at the time that Officer Wright turned on his vehicle's blue lights, he must have at least had reasonable suspicion, supported by articulable facts, that the appellant had committed, or was about to commit a criminal offense.

Police may constitutionally initiate an investigatory stop if they have reasonable suspicion, supported by specific and articulable facts, that a person has either committed a criminal offense or is about to commit a criminal offense. Terry, 392 U.S. at 20-21; State v. Randolph, 74 S.W.3d 330, 334 (Tenn. 2002); Simpson, 968 S.W.2d at 780. In evaluating whether a police officer has reasonable suspicion supported by specific and articulable facts, a court must consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417 (1981); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). This inquiry looks to such factors as the public interest served by the seizure, the nature and scope of the intrusion, and the objective facts on which the law enforcement officer relied in light of his experience. See State v. Pulley, 863 S.W.2d 29, 30-31 (Tenn. 1993). "This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." Watkins, 827 S.W.2d at 294; see Cortez, 449 U.S. at 418. "A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him." Watkins, 827 S .W.2d at 294; see Terry, 392 U.S. at 21. "Finally, the content, quality, and quantity of information possessed by police must be assessed in determining whether it is sufficiently reliable to support a finding of reasonable suspicion." State v. Keith, 978 S.W.2d 861, 867 (Tenn. 1998). The officer, of course, must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. The Fourth Amendment requires some minimal level of objective justification for making the stop. That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. Keith, 978 S.W.2d at 867 (quoting United States v. Sokolow, 490 U.S. 1, 7-8 (1989)). As a general rule, the stop of an automobile is constitutionally reasonable, under both the state and federal constitutions, if the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred. State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997); State v. Willie Norman, No. W2003-02067-CCA-R3-CD, 2004 WL 2255253, at *6 (Tenn. Crim. App., at Jackson, Oct. 7, 2004) (holding that a police officer had reasonable suspicion to stop a defendant because the defendant ran a stop sign and had his music playing "extremely loud").

The appellant herein asserts that his actions did not give Officer Wright reasonable suspicion to stop his vehicle and cites State v. Paul Dotterweich, No. E2004-023839-CCA-R3-CD, 2005 WL 1919780, at *1 (Tenn. Crim. App., at Knoxville, Aug. 10, 2005), to support his argument. In Dotterweich, an informant told two officers that the men they just passed in a parking lot were involved in a fight. When the officers turned around and went back to the parking lot in the direction the men were traveling, the officers observed a vehicle leaving the scene. The officers initiated a traffic stop of the vehicle. Upon stopping the vehicle, the officers observed that the driver smelled strongly of alcohol. Id. On appeal, this Court determined that based on the totality of the circumstances, the officers had specific and articulable facts upon which to base a reasonable suspicion for the traffic stop. Id. at *4. The appellant argues that unlike Dotterweich, in the appellant's case there was "no proof that the [appellant's] car . . . was the only car leaving [the area], the lapse of time in which the [appellant] was seen [was eight to ten minutes], [there was no proof that there were] . . . other people or cars entering or leaving the parking area or a host of other possible specific and articulable facts [existed] which could have led this officer to 'reasonable suspicion.'"

-4-

We disagree with the appellant's interpretation and analysis of <u>Dotterweich</u>. In the case herein, Officer Wright actually witnessed the appellant's apparent intoxication prior to seeing the appellant lean on a car. Officer Wright described the appellant as unsteady on his feet and stated that he was almost "tripping" as he walked across the street into the parking lot. At the time the officer first saw the appellant, he felt that the appellant was a safety risk to himself and others, but was compelled to stay at the site of the "welfare check" because he could not leave his partner with two individuals. After completing the "welfare check", Officer Wright saw what he was "pretty sure" was the same car backing out of a parking space in a nearby parking lot. Thus, we support the "rational inferences and deductions" that Officer Wright, a trained police officer who had made over one hundred driving under the influence arrests, drew from the facts and circumstances on May 6, 2004. <u>Watkins</u>, 827 S .W.2d at 294; <u>see</u> <u>Terry</u>, 392 U.S. at 21.[2] Accordingly, we determine that the totality of the circumstances shows that Officer Wright had ample objective facts upon which to base a reasonable suspicion that the appellant was driving the vehicle while intoxicated. Consequently, the judgment of the trial court is affirmed.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

_____<br>JERRY L. SMITH, JUDGE

---

[2]We were unable to review the videotape of the traffic stop in our review as it was not included in the record on appeal. It is the duty of the appellant to provide and prepare a complete and accurate record on appeal. Tenn. R. App. P. 24(b). The failure to prepare an adequate record for review of an issue ordinarily results in a waiver of that issue. <u>Thompson v. State</u>, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997). However, because we were provided with a transcript of the suppression hearing in the record on appeal, we were able to address the appellant's issue on appeal.