# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### May 3, 2011 Session

## STATE OF TENNESSEE v. CARRIE D. YOUNG

### Direct Appeal from the Circuit Court for Fayette County
### No. 6116          J. Weber McCraw, Judge

### No. W2010-01164-CCA-R3-CD - Filed June 30, 2011

The defendant, Carrie D. Young, stands convicted of possession with intent to deliver 0.5 grams or more of cocaine, a Class B felony. The trial court sentenced her as a Range I, standard offender to an eight-year sentence, to serve 350 days with the remainder suspended. On appeal, the defendant argues that the trial court erred in denying the defendant's motion to suppress and that the evidence was insufficient to support her conviction. Specifically, she argues that the trial court erred in finding that law enforcement had probable cause to do a field strip search of her, that the trial court erred in finding that the confidential informant was reliable, and that the proof was insufficient to show that she intended to deliver the cocaine. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

James W. Hodges, Jr., Memphis, Tennessee, for the appellant, Carrie D. Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Walt Freeland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

A Fayette County grand jury indicted the defendant, Carrie D. Young, on one count of possession with intent to deliver 0.5 grams or more of cocaine, a Class B felony. The

defendant moved the court to suppress evidence seized as a result of an alleged illegal search. The court held a suppression hearing on November 18, 2008.

*Suppression Hearing*

At the suppression hearing, Lieutenant Eric Cook, of the Fayette County Sheriff's Department, testified that an informant supplied the sheriff's department with information on November 16, 2007, related to the defendant. Lieutenant Cook testified that the sheriff's department had "used this particular person several times on several other buys . . . and he had met our criteria for being a reliable informant." He said that the information previously received from the informant proved reliable and resulted in arrests and convictions. Lieutenant Cook testified that the informant ordered three eight-balls of cocaine from the defendant and planned to meet her in Rossville, Tennessee at 1:00 p.m. on November 16, 2007. The informant stated that the defendant would be driving a green car. Lieutenant Cook testified that he and another officer surveilled the meeting location, and at 1:19 p.m., the defendant, accompanied by two females, parked a green car at the location. Lieutenant Cook and the other officer pulled their vehicle behind the defendant's car and approached the car. They observed two females in the front of the car, with the defendant driving, and one female in the back of the car. Lieutenant Cook testified that he observed that the defendant "appeared to be putting something in her pants" as the officers approached. Lieutenant Cook testified that the officers found narcotics on one of the passengers, Annette Pryor, who told them that the defendant put the cocaine in Ms. Pryor's purse. He said that Ms. Pryor also advised the officers that the defendant had put "cocaine down the front of her pants." Upon receiving the information from Ms. Pryor, Lieutenant Cook requested that the sheriff's department dispatch a female officer to the scene, and the officers detained the defendant and the two passengers until Deputy Candice Haynes arrived. Lieutenant Cook testified that he did not personally search the defendant, nor did he witness the search of the defendant.

On cross-examination, Lieutenant Cook testified that he was not present when the confidential informant called the sheriff's department. He agreed that he and the other officer approached the defendant's car with service weapons drawn, ordered the defendant and the passengers out of the car, handcuffed them, and searched the vehicle. Lieutenant Cook said that he did not arrest any of them at that time, and he did not find any narcotics in the vehicle. He proceeded to search the women's purses and arrested Ms. Pryor after finding narcotics in her purse. Lieutenant Cook testified that he did not find narcotics in the other women's purses. He testified that there was a possibility that the vehicle's occupants would destroy evidence before they exited the vehicle, but he agreed that there was not a possibility of them doing so once handcuffed. Lieutenant Cook agreed that the officers did not find any

weapons. He testified that Officer Massey spoke to the confidential informant by phone at 1:00 p.m.

Fayette County Sheriff's Deputy Candice Haynes testified that she responded to the scene at the Rossville Auction Barn on November 16, 2007, at the request of narcotics officers. Deputy Haynes testified that the officers at the scene informed her that one of the women had told them that the defendant had crack cocaine and that one of the officers observed the defendant place something down her pants. She testified that when she asked the defendant if she had anything on her, the defendant told her that she had crack cocaine in her pants. Deputy Haynes said that she instructed the defendant to go behind the building to remove the cocaine from her pants. She testified that when they went behind the building, the defendant advised her that she needed to urinate. Deputy Haynes said that when the defendant urinated, "the crack cocaine fell out." Deputy Haynes collected white rocks that appeared to be crack cocaine from the ground and placed them in an evidence bag. She testified that she had no physical contact with the defendant and denied searching the defendant's body cavities.

On cross-examination, Deputy Haynes explained that the defendant pulled her pants down as she was urinating, and the crack cocaine fell out onto the ground as she pulled her pants down.

Shirley Settles testified that the defendant picked her up in Collierville at 11:30 a.m. on November 16, 2007, and they drove to Memphis before going to Rossville. She recalled that the defendant received phone calls but she did not know from whom nor exactly when the phone calls were received. Ms. Settles said that the defendant wanted to go to Rossville because "she had to go holler at a friend." Ms. Settles testified that she was in the front passenger seat, the defendant was driving, and Ms. Pryor was in the back seat. She recalled that the defendant stopped at the Auction Barn, and law enforcement officers approached the car. The officers had them exit the car and handcuffed them. Ms. Settles testified that Deputy Haynes walked her to the back of the building and asked whether she had any drugs on her. When Deputy Haynes started patting her down, she informed the deputy that she needed to urinate. She said that Deputy Haynes asked her to remove her shoes and socks first and then allowed her to urinate. Ms. Settles agreed that Deputy Haynes asked her to bend over and cough while she was urinating. Ms. Settles testified that she did not have any drugs, and she did not see the defendant put anything in her pants.

On cross-examination, Ms. Settles testified that she saw the officers find cocaine in Ms. Pryor's purse. She said that the defendant told her that she was set up and that "when she started using the bathroom, [the cocaine] fell out."

The defendant testified that she told Deputy Haynes that she had drugs and that the drugs fell out after she had pulled her pants down. She agreed that the drugs fell out when she bent over at the direction of Deputy Haynes. The defendant denied putting anything in her pants when the officers arrived.

On cross-examination, the defendant said that Deputy Haynes patted down her upper body but not her lower body. She testified that she bought the cocaine for $50 from someone in Memphis and that she put it in her vagina. The defendant said that no one else in the car knew that she had the cocaine there.

In its written order denying the defendant's motion to suppress, the trial court made the following findings:

> The Court finds that there was not a body cavity search as described in [Tennessee Code Annotated section] 40-7-121, and therefore, no search warrant was required. The Court notes that the most consistent testimony revealed that the drugs fell from the defendant's pants as she voluntarily urinated and was not a result of any actual search by an officer. The Court further finds the detaining of the defendant did constitute an arrest and that if the finding of drugs did rise to the level of a search, it was incident to arrest and thus, a permissive search.

*Trial*

The matter proceeded to trial on December 4, 2008. Lieutenant Eric Cook testified that the sheriff's department received information from a confidential informant on November 16, 2007, at 1:00 p.m. In response to that information, he set up surveillance in front of the Auction Barn in Rossville, Tennessee on Highway 57. Approximately fifteen minutes later, the defendant, driving a green Chevrolet Cavalier, drove into the Auction Barn parking lot and stopped near the rear of the property. Lieutenant Cook, accompanied by Inspector Garcia, drove their unmarked vehicle into the parking lot behind the defendant. They exited their vehicle and approached the defendant's car with weapons drawn. They holstered the weapons when they realized that there was no threat. Lieutenant Cook testified that there were three females in the car, and the defendant was in the driver's seat. He said that they ordered the women to put their hands up, but the defendant "fiddl[ed] with the front of her clothing" before complying. Lieutenant Cook said that they detained all three women outside of the car. The front passenger was Shirley Settles, and he said that they released her when they did not find any narcotics on her person or in her purse. They did find crack cocaine in the purse of the rear passenger, Antoinette Pryor, and they subsequently arrested

her. Lieutenant Cook testified that he did not find drug paraphernalia in the defendant's vehicle, on any of the passengers, or in any of their purses. He said that a female officer, Deputy Candice Haynes, was dispatched to the scene to search the women. She took each one behind the building to perform a search. Lieutenant Cook testified that he did not participate in or witness the searches. When Deputy Haynes returned from searching the defendant, she gave Lieutenant Cook several white rocks that appeared to be crack cocaine. Lieutenant Cook testified that in his experience, the amount of crack cocaine a person would have for personal consumption would be "smaller than a green pea." He said that the amount that Deputy Haynes gave him at the scene was "a lot more" than the amount that is normal for personal consumption.

On cross-examination, Lieutenant Cook agreed that the confidential informant had ordered three eight-balls of crack cocaine, which would amount to 9.75 grams, but the amount seized in this case was 1.8 grams.

On re-direct examination, Lieutenant Cook testified that Antoinette Pryor told him that she received the crack cocaine found in her purse from the defendant.

Fayette County Sheriff's Deputy Candice Haynes testified that she was dispatched to the Auction Barn in Rossville, Tennessee, on November 16, 2007, to perform searches of three females who Inspector Garcia and Lieutenant Cook had in custody. Regarding her search of the defendant, Deputy Haynes testified that she patted down the defendant for weapons and asked the defendant if she had any narcotics on her person. The defendant responded that she did and informed the deputy that she needed to urinate. Deputy Haynes took the defendant behind the Auction Barn building, let her urinate, and told her that she needed to give her the narcotics. Deputy Haynes testified that the defendant began to urinate on herself as she pulled her pants down. While she was urinating, several rocks of what appeared to be crack cocaine fell onto the ground. Deputy Haynes collected the rocks from the ground. The defendant told her that was all of the crack cocaine that she had, and Deputy Haynes asked the defendant to show the deputy her underwear so that the deputy could make sure there were no more rocks there.

Tennessee Bureau of Investigation Special Agent Dana Parmenter, a forensic scientist in the controlled substance identification section, testified that the substance she received from the Fayette County Sheriff's Department in the case was 1.8 grams of cocaine.

For the defense, Shirley Settles testified that she was with the defendant on November 16, 2007. The defendant picked her up in Collierville, and they drove to Memphis before driving to the Auction Barn in Rossville. She said that the defendant received calls on her cell phone when they were driving from Memphis to Rossville. When they arrived at the

Auction Barn, Ms. Settles said that the defendant parked and turned off her car. She estimated that twenty minutes passed before the law enforcement officers pulled up behind them in a truck. She said that the officers ordered them to put their hands up, and she complied. Ms. Settles testified that she did not know whether the other two women in the car complied. The officers had them exit the car and handcuffed them. She said that the defendant asked one of the officers if she could use the restroom, but he did not allow her to. Ms. Settles testified that when Deputy Haynes arrived, she took them behind the Auction Barn one by one. She took the defendant first and then Antoinette Pryor. Ms. Settles testified that when she went behind the building with Deputy Haynes, the deputy ordered her to pull her pants down. Ms. Settles said that she needed to urinate at that point, so she did. The deputy told her to bend over and cough. Ms. Settles testified that she did not know that anyone in the car had drugs before they arrived in Rossville. She said that the officers found crack cocaine and a pipe in Ms. Pryor's purse.

On cross-examination, Ms. Settles testified that the defendant told her that she had been set up. The defendant also told her that when she was with Deputy Haynes, she urinated and the cocaine "just fell out."

Following close of proof and deliberations, the jury found the defendant guilty of possession with intent to deliver 0.5 grams or more of cocaine. The trial court sentenced her as a Range I, standard offender to an eight-year sentence, to serve 350 days with the remainder suspended.

**Analysis**

On appeal, the defendant argues that the trial court erred in denying the defendant's motion to suppress and that the evidence was insufficient to support her conviction. Specifically, she argues that the trial court erred in finding that law enforcement had probable cause to search her, that the trial court erred in finding that the confidential informant was reliable, and that the proof was insufficient to show that she intended to deliver the cocaine.

*I. Denial of Motion to Suppress (Defendant's Issues 1 and 2)*

The defendant contends that the trial court erred in denying her motion to suppress by erroneously finding that the officers had probable cause to strip search the defendant and by erroneously finding that the confidential informant was reliable.

When reviewing the trial court's decision on a motion to suppress, this court conducts a *de novo* review of the trial court's conclusions of law and application of law to facts. *See*

*State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001). However, the trial court's findings of fact are presumed correct unless the evidence contained in the record preponderates against them. *See State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *State v. Lawrence*, 154 S.W.3d 71, 75 (Tenn. 2005) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). Moreover, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001).

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. These constitutional provisions are designed "to prevent arbitrary and oppressive interference with the privacy and personal security of individuals." *Daniel*, 12 S.W.3d at 424 (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984)). Therefore, "[u]nder both the federal and state constitutions, a warrantless seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the state demonstrates that the seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Nicholson*, 188 S.W.3d 649, 656 (Tenn. 2006); *see also State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

First, we must determine whether the officers' initial detention of the defendant falls under one of the exceptions to the warrant requirement. The applicable exception in this case is a brief investigatory stop by a law enforcement officer if the officer has a reasonable suspicion, based upon specific and articulable facts, that a person has either committed a criminal offense or is about to commit a criminal offense. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Binette*, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975); *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). Reasonable suspicion is something more than an "inchoate and unparticularized suspicion or hunch." *Terry*, 392 U.S. at 27. In evaluating whether a police officer has a reasonable suspicion supported by specific and articulable facts, a court must consider the totality of the circumstances. *Binette*, 33 S.W.3d at 218. Those circumstances may include the personal observations of the police officer, information obtained from other officers and agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Watkins*, 827 S.W.2d at 294. Additionally, the court must consider any rational inferences and deductions that a trained officer may draw from those circumstances. *Id.* If the officers rely on information from a confidential informant as a basis for forming reasonable suspicion, they must be able to demonstrate that the informant has a basis of knowledge and is credible. *State v. Simpson*, 968 S.W.2d 776, 781 (Tenn. 1998). The Tennessee Supreme

Court has noted that reasonable suspicion can be based on information that is less reliable than that required to establish probable cause. *Id.* at 781-82 (citing *State v. Pulley*, 863 S.W.2d 29, 32 (Tenn. 1993)).

Lieutenant Cook relied on information from a confidential informant that the informant had ordered cocaine from the defendant and that the defendant would be at the Auction Barn, with the cocaine, soon after 1:00 p.m. The informant told the sheriff's department that the defendant would be driving a green car. At 1:19 p.m., the defendant parked a green car at the Auction Barn. Lieutenant Cook testified at the suppression hearing that the informant had provided information to the sheriff's department in the past that led to arrests and convictions. We conclude that Lieutenant Cook's testimony demonstrated that the informant was credible and had a basis of knowledge, and thus, the informant's information was reliable enough to form the basis for Lieutenant Cook's reasonable suspicion that the defendant had committed or was about to commit a criminal offense. Therefore, we conclude that the officers' initial detention of the defendant was lawful under the investigatory stop exception to the warrant requirement.

A police officer's actions after conducting an investigatory stop must reasonably relate to the circumstances which justified the stop in the first place. *See Terry*, 392 U.S. at 20. The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. *Id.* In determining the reasonableness of the detention, the proper inquiry is whether during the detention, the officer diligently pursued a means of investigation that was likely to confirm or dispel his or her suspicions quickly. *United States v. Sharpe*, 470 U.S. 675, 686 (1985). "If the time, manner or scope of the investigation exceeds the proper parameters," a constitutionally permissible stop may be transformed into an impermissible stop. *State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002). However, if the officer develops a reasonable suspicion that the occupant is engaged in other criminal activity during a valid stop, further detention is justified. *State v. Michael N. Smith*, No. M2005-00173-CCA-R3CD, 2005 WL 2333632, at *4 (Tenn. Crim. App., at Nashville, Sept. 23, 2005); *State v. Branden Haney and Lawrence Davis*, No. E2002-00559-CCA-R3-CD, 2003 WL 22169708, at *5 (Tenn. Crim. App., at Knoxville, Sept. 19, 2003). If the officer "has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime," the officer may conduct a limited pat-down search for weapons. *Terry*, 392 U.S. at 27; *see also State v. Crutcher*, 989 S.W.2d 295, 300 (Tenn. 1999).

In this case, the record shows that the officers searched the defendant's vehicle and the purses of the defendant and passenger Antoinette Pryor and found cocaine in Ms. Pryor's

purse. Ms. Pryor advised the officers that she obtained the cocaine from the defendant and that the defendant had put cocaine down her pants. The legality of the officers' search of Ms. Pryor's purse is inapposite in this case.[1] Ms. Pryor's information, coupled with Lieutenant Cook's observation that the defendant "appeared to be putting something in her pants" as the officers approached, led the officers to continue the defendant's detention and to request that Deputy Haynes come to the scene to search the women. Deputy Haynes' subsequent interaction with the defendant led to the defendant admitting that she had cocaine on her person and led to the discovery of that cocaine. At the suppression hearing, Deputy Haynes testified that she had no physical contact with the defendant[2] and that the defendant voluntarily pulled down her pants to urinate, which is when the cocaine fell to the ground. The trial court accredited her testimony and concluded that the discovery of the cocaine was not a result of a search. We agree with the trial court. The defendant's voluntary removal of her pants, resulting in the discovery of the cocaine, did not amount to a strip search as the defendant contends.[3] Therefore, the deputy did not perform an illegal search of the defendant.

Once the cocaine had fallen to the ground, it was in the plain view of Deputy Haynes. Under the plain view doctrine, three requirements must be met to justify a warrantless search and seizure of property: (1) the items seized must be in plain view; (2) the initial intrusion that enables the police to view the items seized must be lawful; and (3) the incriminating nature of the items seized must be readily apparent. *See State v. Cothran*, 115 S.W.3d 513, 524-25 (Tenn. Crim. App. 2003); *see also Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Based on Deputy Haynes testimony, accredited by the trial court, the cocaine was on the ground in plain view, and she recognized it as cocaine from her experience in law enforcement. We have previously determined that the "initial intrusion" - *i.e.* the detention

---

[1] If the defendant had challenged the search of Ms. Pryor's purse, she would have had to establish that she had standing and a legitimate expectation of privacy in Ms. Pryor's purse. *See Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980).

[2] The defendant testified at the suppression hearing that Deputy Haynes patted her down, and, at trial, Deputy Haynes testified that she performed a weapons frisk prior to going behind the building with the defendant. The defendant does not challenge the legality of the pat down.

[3] Tennessee Code Annotated section 40-7-119 provides the following rule regarding strip searches:
(a) As used in this section, "strip search" means having an arrested person remove or arrange some or all of the person's clothing so as to permit a visual inspection of the genitals, buttocks, anus, female breasts or undergarments of the arrested person.
(b) No person arrested for a traffic, regulatory or misdemeanor offense, except in cases involving weapons or a controlled substance, shall be strip searched unless there is reasonable belief that the individual is concealing a weapon, a controlled substance or other contraband.

of the defendant - was lawful. Thus, the requirements for the police to seize property under the plain view doctrine have been met. Therefore, the defendant's argument is without merit.

### III. Sufficiency of the Evidence

The defendant contends that the state did not rebut proof that the defendant possessed the cocaine for personal consumption, and therefore, the defendant was not guilty of possession with intent to deliver. While the defendant presents the issue as a trial court error, the issue of the defendant's intent was a question for the jury's determination. Therefore, we will treat the defendant's issue as an argument that the evidence was not sufficient to prove that she possessed the cocaine with intent to deliver.

It is well established that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); *see also* Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *Carruthers*, 35 S.W.3d at 558. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given to the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006). Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The jury convicted the defendant of possession with intent to deliver. To obtain the conviction, the state had to prove beyond a reasonable doubt that the defendant knowingly "[p]ossess[ed] a controlled substance with intent to manufacture, deliver or sell the controlled substance." Tenn. Code Ann. § 39-17-417(a)(4). "It may be inferred from the amount of a

controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *Id.* § 39-17-419; *see also State v. John Fitzgerald Belew*, No. W2004-01456-CCA-R3-CD, 2005 WL 885106, at *5 (Tenn. Crim. App., at Jackson, Apr. 18, 2005) (concluding that "this statute permits the jury to draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered together").

Taken in the light most favorable to the state, the evidence presented at trial showed that the defendant was responding to a confidential informant's request for cocaine. While she arrived at the designated location with far less than the confidential informant had asked for, she possessed 1.8 grams of crack cocaine. The officers did not find drug paraphernalia on her or in her vehicle. Contrary to the defendant's assertions, there was no proof presented at trial that the defendant possessed the cocaine for personal use.[4] The jury was entitled from this evidence to draw the inference that the defendant intended to deliver the cocaine. Therefore, the evidence was sufficient to support the defendant's conviction.

_____
J.C. McLIN, JUDGE

---

[4] The defendant testified at her sentencing hearing that she intended to use the cocaine for personal use.